# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YANG CHEN and LAWRENCE SASSO, on behalf of themselves and all others similarly situated, | Civil Action No. 14-cv-01771-VB |
| Plaintiffs, | Civil Action No. 14-cv-02042-VB |
| v. | |
| HIKO ENERGY, LLC | ECF CASE |
| Defendant. | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS

Todd S. Garber
D. Greg Blankinship
Jeremiah Frei-Pearson
Shin Y. Hahn
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
1311 Mamaroneck Avenue
White Plains, New York 10605

Matthew R. Mendelsohn
David A. Mazie (*pro hac vice* forthcoming)
Adam M. Epstein (*pro hac vice* forthcoming)
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068

Joseph G. Sauder (*pro hac vice* forthcoming)
Matthew D. Schelkopf (*pro hac vice* forthcoming)
Benjamin F. Johns (*pro hac vice* forthcoming)
Joseph B. Kenney (*pro hac vice* forthcoming)
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041

*Attorneys for Plaintiffs and the putative class*

## TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION .......................................................................................1

I.    PLAINTIFFS HAVE PROPERLY PLED
    CLAIMS FOR WHICH RELIEF CAN BE GRANTED ...............................................2

    A.  Plaintiffs' Section 349 Claim Should Proceed........................................................2

        1.  Plaintiffs Have Satisfied Section 349's Territoriality Requirement .................2

        2.  Plaintiffs Have Alleged Cognizable Injuries Under Section 349 .....................4

    B.  Plaintiffs' Section 349-d Claim Should Proceed .......................................................8

    C.  Plaintiffs' NJCFA Claim Should Proceed ...........................................................9

        1.  Plaintiffs Have Alleged Unlawful Conduct ...................................................10

        2.  Plaintiffs' Allegations Are Based On More Than Breach of Contract ...........15

    D.  Plaintiffs' Breach Of Contract Cause Of Action Should Proceed ........................16

    E.  Plaintiffs Sufficiently State A Claim
        For Breach Of The Duty Of Good Faith And Fair Dealing..................................18

    F.  Plaintiffs Adequately State A Claim For Unjust Enrichment ...............................18

II.    HIKO'S MOTION TO STRIKE THE
    CLASS ALLEGATIONS SHOULD BE DENIED ....................................................20

    A.  Plaintiffs Adequately Plead That A Class Action
        Is The Superior Method For Resolving The Proposed Class's Private Claims .....21

    B.  Plaintiffs Sufficiently Plead The Commonality Requirement of Rule 23(a)(2) ....27

    C.  Plaintiffs Sufficiently Plead Predominance Under Rule 23(b)(3) ........................28

CONCLUSION.........................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                                                            **Page(s)**

*511 West 232nd Owners Corp. v. Jennifer Realty Co.*,
    98 N.Y.2d 144, 746 N.Y.S.2d 131, 773 N.E.2d 496 (2002)...................................................... 18

*Abbas v. Dixon*,
    480 F.3d 636 (2d Cir. 2007).......................................................................................... 28

*Ackerman v. Coca-Cola, Inc.*,
    2010 WL 2925955 (E.D.N.Y. Jul. 21, 2010) ....................................................................... 7

*Am. S.S. Owners v. Lafarge N. Am., Inc.*,
    474 F. Supp. 2d 474, 482 (S.D.N.Y. 2007) ..............................................................25

*An Giang Agric. & Food Import Export Co. v. United States*,
    350 F. Supp. 2d 1162 (Ct. Int'l Trade 2004) ..................................................... 25

*Anne Arundel County v. Halle Dev.*,
    408 Md. 539, 971 A.2d 214 (2009) ...................................................................... 26

*Barry v. Arrow Pontiac, Inc.*,
    100 N.J.57, 494 A.2d 804 (N.J.1985) ..................................................................... 11

*Bolanos v. Norwegian Cruise Lines Ltd.*,
    212 F.R.D. 144 (S.D.N.Y. 2002) ........................................................................... 30

*Brown v. Blue Cross & Blue Shield of Michigan, Inc.*,
    167 F.R.D. 40 (E.D. Mich. 1996) ........................................................................... 23

*Carvel Corp. v. Diversified Mgmt. Group, Inc.*,
    930 F.2d 228 (2d Cir. 1991).................................................................................. 18

*Chenensky v. New York Life Ins. Co.*,
    2011 WL 1795305 (S.D.N.Y. Apr. 27, 2011)....................................................... 19

*Chen-Oster v. Goldman, Sachs & Co.*
    877 F. Supp. 2d 113 (S.D.N.Y. 2012)............................................................ 20, 21

*Clark v. McDonald's Corp.*,
    213 F.R.D. 198 (D.N.J. 2003)................................................................................ 21

*County of Stanislaus v. Pacific Gas & Elec. Co.*,
    1994 WL 706711 (E.D. Cal. 1994)........................................................................ 26

*Cox v. Microsoft Corp.*,
809 N.Y.S.2d 480 (N.Y. Sup. Ct. 2005) .................................................................. 6

*Cox v. Sears Roebuck & Co.*,
647 A.2d 454 (N.J. 1994)......................................................................... 10,11, 15

*Cross & Cross Props., Ltd. v. Everett Allied Co.*,
886 F.2d 497 (2d Cir.1989)............................................................................... 18

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013)............................................................................. 3, 4

*Dalton v. Educ. Testing Serv.*,
87 N.Y.2d 384, 639 N.Y.S.2d 977 , 663 N.E.2d 289 (1995)............................. 18, 19

*Dank V. Sears Holding Mgmt. Corp.*,
59 A.D.3d 582 (2d Dep't 2009).......................................................................... 6

*Dewey v. Volkswagen Aktiengesellschaft*,
681 F.3d 170 (3d Cir. 2012)............................................................................... 9

*Dewey v. Volkswagen*,
558 F. Supp. 2d 505 (D.N.J. 2008) ..................................................................... 9

*Diesel Props S.r.L. v. Greystone Bus, Credit II LLC*,
2008 WL 4833001 (S.D.N.Y. Nov. 5, 2008)........................................................ 20

*Dupler v. Costco Wholesale Corp.*,
249 F.R.D. 29 (E.D.N.Y. 2008) ...................................................................... 28, 29

*Ft. Howard Paper Co. v. William P. Witter, Inc.*,
787 F.2d 784 (2d Cir.1986).............................................................................. 25

*Furst v. Einstein Moomjy, Inc.*,
182 N.J. 1 (2004) ........................................................................................... 15

*Fuscellaro v. Combined Ins. Group, Ltd.*,
2011 U.S. Dist. LEXIS 111470 (D.N.J. Sept. 29, 2011) ........................................15

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
98 N.Y.2d 314, 324 & n. 1, 746 N.Y.S.2d 858 (2002) ...........................................2

*Greystone CDE, LLC v. Santa Fe Pointe, L.P.*,
2008 WL 482291 (S.D.N.Y. Feb.20, 2008)......................................................... 25

*GTFM, Inc. v. Park*,
2002 WL 31890940 (S.D.N.Y. Dec. 30 2002) ..................................................... 25

{00267392 }                                      iv

*Harnish v. Widener Univ. Sch. of Law*,
  931 F. Supp. 2d 641 (D.N.J. 2013) ..................................................... 9

*Harsco Corp. v. Segui*,
  91 F.3d 337 (2d Cir. 1996) ............................................................ 16

*Hicks v. City of New York*,
  268 F. Supp. 2d 238 (E.D.N.Y.2003) ................................................. 25

*In re Beacon Assoc. Litig.*,
  2012 WL 1569827 (S.D.N.Y. May 3, 2012) ............................... 22, 23, 27

*In re IndyMac Mortgage–Backed Sec. Litig.*,
  286 F.R.D. 226 (S.D.N.Y. 2012) ..................................................... 27

*In re Pradaxa (Dabigatran Etexilate) Products Liab. Litig.*,
  MDL 2385, 2013 WL 3791509 (S.D. Ill. July 18, 2013) ......................... 28

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001).......................................................... 30

*In re Wolrdcom*,
  343 B.R. 412 (Bankr. S.D.N.Y. 2006) ............................................... 25

*Jernow v. Wendy's Int'l, Inc.*,
  2007 U.S. Dist. LEXIS 85104 (S.D.N.Y. Nov. 15, 2007) .......................... 6

*Kamm v. Cal. City Dev. Co.*,
  509 F.2d 205 (9th Cir. 1975) ........................................................ 23

*Kassman v. KPMG LLP*,
  925 F. Supp. 2d 453 (S.D.N.Y. 2013)............................................... 21

*Klein v. Budget Rent a Car Sys.*,
  2013 U.S. Dist. LEXIS 58403 (D.N.J. Apr. 24, 2013) ........................... 14

*Lafarge N. Am., Inc.*,
  474 F. Supp. 2d 474 (S.D.N.Y. 2007).............................................. 25

*Lasala v. Needham & Co.*,
  399 F. Supp. 2d 421 (S.D.N.Y. 2005).............................................. 24

*Leon v. Rite Aid Corp.*,
  774 A.2d 674 (N.J. Super. Ct. App. Div. 2001)............................... 13, 16

*Makaeff v. Trump Univ., LLC*,
   2014 WL 688164 (S.D. Cal. Feb. 21, 2014) ........................................................... 22

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
   244 F.R.D. 204 (S.D.N.Y. 2007) ........................................................................... 18

*Massei v. Money Store*,
   288 F.R.D. 45 (S.D.N.Y. 2012) ............................................................................. 30

*Mazzola v. Roomster Corp.*,
   849 F. Supp. 2d 395 (S.D.N.Y. 2012) .................................................................... 21

*Miller v. Am. Family Publishers*,
   284 N.J. Super. 67, 663 A.2d 643 (N.J. Super. Ch.1995) ....................................... 11

*Miller v. Optimum Choice, Inc.*,
   2006 WL 2130640 (D. Md. July 28, 2006) ............................................................ 30

*Mooney v. Allianz Life Ins. Co. of North America*,
   244 F.R.D. 531 (D. Minn. 2007) ........................................................................... 22

*Mountz v. Global Vision Prods., Inc.*,
   3 Misc.3d 171, 770 N.Y.S.2d 603 (Sup. Ct. 2003) .................................................... 3

*Nelson v. Xacta 3000 Inc.*,
   2010 WL 19312151 (D.N.J. May 12, 2010) ........................................................... 12

*New York Career Guidance Services, Inc. v. Wells Fargo Fin. Leasing, Inc.*,
   005 WL 1252315 (N.J. Super. Ct. Law Div. May 2, 2005) ...................................... 10

*Newman v. RCN Telecom Servs., Inc.*,
   238 F.R.D. 57 (S.D.N.Y. 2006) ............................................................................. 29

*Official Comm. of Unsecured Creditors of WorldCom, Inc. v Securities & Exch. Commn.*,
   467 F. 3d 73 (2d Cir. 2006) ................................................................................... 27

*Ostrof v. State Farm Mut. Auto. Ins. Co.*,
   200 F.R.D. 521 (D. Md. 2001) .............................................................................. 24

*Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*,
   486 F. Supp. 1118 (S.D.N.Y.1980) ........................................................................ 26

*Parker v. Time Warner Entm't Co.*,
   331 F.3d 13 (2d Cir. 2003) ............................................................................. 21, 29

*People ex rel. Spitzer v. Applied Card Sys., Inc.*,
   11 N.Y.3d 105, 894 N.E.2d 1 (2008) ..................................................................... 26

*People ex rel. Spitzer v. Telehublink Corp.,*
  301 A.D.2d 1006 (2003) ........................................................................ 3

*PFT of Am., Inc. v. Tradewell, Inc.,*
  1999 WL 179358 (S.D.N.Y. Mar. 31, 1999) ........................................ 21

*Ramirez v. STi Prepaid LLC,*
  644 F. Supp. 2d 496 (D.N.J. 2009) ..................................................... 12

*Rodriguez v. It's Just Lunch, Int'l,*
  2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) ......................................... 6

*Roe v. City of New York,*
  151 F. Supp. 2d 495 (S.D.N.Y.2001) ................................................... 20

*Schaefer v. Gen. Elec. Co.,*
  2008 WL 649189 (D. Conn. Jan. 22, 2008) ......................................... 21

*Scott v. Bell Atlantic Corp.,*
  98 N.Y.2d 314 (2002) ............................................................................ 4

*Securities & Exch. Commn. v Fischbach Corp.,*
  133 F.3d 170 (2d Cir. 1997) ................................................................. 27

*Servedio v. State Farm Ins. Co.,*
  889 F. Supp. 2d 450 (E.D.N.Y. 2012) ............................................... 7, 8

*Slack v. Suburban Propone Partners,*
  2010 U.S. Dist. LEXIS 135530 (D.N.J. Dec. 22, 2010) ................... 13, 14

*Smajlaj v. Campbell Soup Co.,*
  782 F. Supp. 2d 84 (D.N.J. 2011) ..................................................... 9, 10

*Small v. Lorillard Tobacco Co.,*
  94 N.Y.2d 43 (N.Y. 1999) ...................................................................... 7

*Solomon v. Bell Atl. Corp.,*
  9 A.D.3d 49 (2004) .............................................................................. 29

*Spagnola v. Chubb Corp.,*
  264 F.R.D. 76 (S.D.N.Y. 2010) ........................................................... 30

*Spagnola v. Chubb Corp.,*
  574 F.3d 64 (2d Cir. 2009) ............................................................... 7, 29

*Stern v. H. Dimarzo, Inc.*,
  19 Misc.3d 1144(A), 867 N.Y.S.2d 20 (N.Y. Sup. Ct. June 11, 2008) .............................. 20, 21

*Sykes v. Mel Harris & Associates, LLC*,
  285 F.R.D. 279 (S.D.N.Y. 2012) ..................................................................................... 30

*Szczubelek v. Cendant Mortg. Corp.*,
  215 F.R.D. 107 (D.N.J. 2002) ......................................................................................... 13

*Tedeschi v. Wagner Coll.*,
  49 N.Y.2d 652, 427 N.Y.S.2d 760, 404 N.E.2d 1302 (1980).......................................... 18

*Thornton v. State Farm Mut. Auto Ins. Co.*,
  2006 WL 3359448 (N.D. Ohio Nov. 17, 2006) ....................................................... 23

*Tongo v. Derwinski*,
  1991 WL 243421 (S.D.N.Y. Nov. 14, 1991) .................................................................. 21

*Travellers Int'l, A.G. v. Trans World Airlines, Inc.*,
  41 F.3d 1570 (2d Cir.1994).............................................................................................. 18

*United States v. Katz*,
  2011 WL 2175787 (S.D.N.Y. June 2, 2011) .................................................................. 27

*Union Ink Co., Inc. v. AT&T Corp.*,
  352 N.J. Super. 617 (2002) ............................................................................................. 13

*Van Holt v. Liberty Mut. Fire Ins. Co.*,
  163 F.3d 161 (3d Cir. 1998).............................................................................................. 15

*Waldman v. New Chapter, Inc.*,
  714 F. Supp. 2d 398 (E.D.N.Y. 2010) ............................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)..................................................................................................... 28

*Watts v. Jackson Hewitt Tax Servo Inc.*,
  579 F. Supp. 2d 334 (E.D.N.Y. 2008) ............................................................................ 5, 6

*Wechsler v. Southeastern Props., Inc.*,
  63 F.R.D. 13 (S.D.N.Y. 1972) ........................................................................................ 22

*Weinberg v. Sprint Corp.*,
  173 N.J. 233, (N.J. 2002) ................................................................................................ 15

## **Statutes**

N.J.S.A. § 56:8-1 *et seq.* ........................................................................................... 27

N.J.S.A. § 56:8-2 ......................................................................................................... 10

N.Y. Gen. Bus. Law § 349 ................................................................................... passim

N.Y. Gen. Bus. Law § 349-d ................................................................................ passim

## **Rules**

Fed. R. Civ. P. 12(f) .................................................................................................... 20

## INTRODUCTION

Defendant HIKO Energy, LLC ("HIKO") promised Plaintiff Chen that it would deliver "guaranteed savings" of between 1-7% over his local utilities' rates for five months, and thereafter he would be charged a "competitive" variable rate.  HIKO also made concrete and specific representations regarding the basis upon which its variable rate would be determined, representations which Plaintiffs allege with great specificity are false.

With respect to its electricity rate, HIKO represents that the rate "shall be a Variable Rate per kWh which shall each month change and reflect *the wholesale cost of electricity (including capacity, energy, balancing, settlement, ancillaries), transmission and distribution charges, and other market related factors*, plus all sales and other applicable taxes, fees, charges or other assessments and HIKO's costs, expense and margins."  Second Amended Complaint ("SAC") ¶ 15 (emphasis added).  Similarly, with respect to gas, HIKO represents that its rate will be variable and will reflect "*the wholesale cost of natural gas (including commodity, capacity, storage and balancing), transportation to the Delivery Point, and other market-related factors*, plus all applicable taxes, fees, charges or other assessments and HIKO's costs, expenses and margins."  *Id*. (emphasis added).

Any average consumer would understand from these representations that HIKO's rates will increase or decrease based on the specific wholesale cost of electricity and gas, and that the rates will be reflective of conditions in the market.  *Id*. ¶39.  But HIKO's rates bear little or no relation to wholesale costs; to the contrary, there are significant periods when wholesale costs remain steady or fall while at the same time HIKO's rates rise, to the benefit of HIKO and detriment of consumers.  *Id*. ¶¶ 2, 35.  Moreover, HIKO's rates do not reflect market related factors, not only because its rates do not reflect changes in the wholesale market but also because its rates are substantially higher than rates otherwise available in the market, namely the rates

local utilities and other energy service companies ("ESCOs") charge.  *Id*. ¶¶ 32-39.  Indeed, at one point, HIKO's energy rates were almost **eight times higher** than PSE&G's rate.  *Id*. ¶¶ 22, 32, 37.  As pled in the SAC, an average consumer would understand the representation that HIKO's rates are based on "market related factors" to mean that its rates are commensurate with rates otherwise available in the market.  *Id*. ¶ 39.  And such a consumer promised guaranteed savings of between 1% and 7% versus the utilities rate would also expect to receive a rate that is actually lower.  But such a consumer would be wrong, and those like Plaintiffs that switched to HIKO paid a steep price.

The SAC is replete with specific allegations identifying HIKO's deceptive representations and omissions to support Plaintiffs' claims, it provides more than sufficient factual averments to support Plaintiffs' breach of contract claims, and HIKO has not met its burden to demonstrate that the class allegations should be struck or that the case should be stayed.  Defendant's motion should be denied in its entirety.

## I.   PLAINTIFFS HAVE PROPERLY PLED CLAIMS FOR WHICH RELIEF CAN BE GRANTED.

### A.   Plaintiffs' Section 349 Claim Should Proceed.

Defendant offers only two arguments in support of its motion to dismiss Plaintiffs' N.Y. GEN. BUS. LAW § 349 ("Section 349") claim: first, that Section 349 does not reach Defendant's conduct because the misrepresentations at issue occurred in New Jersey, and second, that charging consumers up to eight times more than the rates local utilities charge is simply a breach of contract.  These arguments are not supported by New York law.

#### 1.   Plaintiffs Have Satisfied Section 349's Territoriality Requirement.

Section 349 is applicable where "the transaction in which the consumer is deceived  . . . occur[s] in New York."  *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 & n. 1, 746

N.Y.S.2d 858 (2002).  Defendant argues that, because the misrepresentations occurred in New Jersey, Section 349 does not apply.  Def. Mem. at 7-8.  That simple view of what constitutes a "transaction" under *Goshen* was decisively rejected by the Second Circuit Court of Appeals in *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013).

There, the Second Circuit determined that the appropriate test to be applied for determining whether Section 349 applies to out of state residents is not simply based on where the consumer resides, but rather whether some part of the transaction occurred in New York:

> [W]e think the appropriate test in this case is to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than "on the residency of the parties." *Id.* at 325, 746 N.Y.S.2d 858, 774 N.E.2d 1190.  This accords with *Goshen's* admonition that section 349 was not "intended to function as a per se bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state." *Id.*

*Cruz*, 720 F.3d at 122.  Thus, it is sufficient if "some part of the underlying transaction . . . occur[red] in New York State."  *Id.* at 124 (citing *Mountz v. Global Vision Prods., Inc.,* 3 Misc.3d 171, 770 N.Y.S.2d 603, 608 (Sup. Ct. 2003)).[1]

The facts in *Cruz* are strikingly similar to the case at bar.  There, the Second Circuit held that out-of-state plaintiffs had standing to bring Section 349 claims because they plead that: (1) the defendant was paid in New York and the defendant only issued refunds from New York, (2) the defendant required that all customer communications be directed to a New York location, and (3) the operative agreements contained New York choice-of-law and forum-selection clauses.  *Cruz*, 720 F.3d at 123-24.  As in *Cruz*, HIKO is a New York LLC whose principal place of business is in Monsey, New York where it presumably drafted the customer agreements, the guaranteed savings promotion, and made its rate decisions.  SAC ¶ 10.  This is also the same

---

[1] The New York Appellate Division, Third Department, also declined to interpret *Goshen* as requiring that the consumer reside in New York.  *See People ex rel. Spitzer v. Telehublink Corp.*, 301 A.D.2d 1006, 1009-10 (2003) (Section 349 does "not limit petitioner's authority to seek relief on behalf of parties injured by conduct in New York merely because those parties are nonresidents.").

location where HIKO receives payment for the energy it supplies and issues refunds to its customers.  *Id*.  Second, HIKO's "Contact Us" page directs consumers to its Monsey, New York mailing address and phone number.[2]  Third, HIKO's contract contains both a New York forum-selection clause and a choice-of-law clause **requiring** the application of New York law.[3]  Therefore, Plaintiffs easily satisfy the *Cruz* standard, as HIKO did more than just hatch its deceptive scheme in New York (although it certainly did that as well).[4]

### 2. Plaintiffs Have Alleged Cognizable Injuries Under Section 349.

Defendant next argues that Plaintiffs' Section 349 claims should be dismissed because their injuries were not independent of the loss caused by HIKO's breach of contract.  Def. Mem. at 8-9.  But the complaint alleges that HIKO made affirmative misrepresentations regarding the rates it would charge, that it failed to disclose to consumers that its rates would always be substantially higher than local utilities' and other ESCOs' rates, that its rates are not in fact based on the represented factors, and that as a result of these misrepresentations and omissions, Plaintiffs and the proposed class paid a substantial price premium for their electricity.  Such allegations are more than sufficient to defeat Defendant's motion to dismiss.

First, Defendant is incorrect in asserting that the Plaintiffs simply allege a breach of contract.  With respect to Mr. Chen, the SAC alleges that he was induced to switch to HIKO because the uniform "Supply Agreement and Authorization" contained a promotional advertisement, separate and apart from the "Terms and Conditions," titled "HIKO ENERGY GUARANTEED SAVINGS AND FREE MONTHLY PROMOTION."  SAC Exhibit 3.  Thus, the savings guarantee is a separate promotional advertising not contained in the representations

---

[2]  *See* http://www.HIKOenergy.com/contact.html (last visited Aug. 17, 2014).

[3]  *See* SAC Exhibits 1-3 ¶ 15.

[4]  Defendants' reliance on *Scott v. Bell Atlantic Corp.*, 98 N.Y.2d 314 (2002) is thus inapposite, as the plaintiff there simply alleged that the marketing campaign originating in New York.  *Id.* at 326.

made under the "Terms and Conditions" section and it is therefore not coterminous with Plaintiffs' contract claims.

With respect to both Plaintiffs, the SAC pleads that HIKO affirmatively represented that its prices would reflect the wholesale cost of energy and other market related factors when in fact its rates are much higher.  SAC ¶¶ 35-41.  The SAC alleges that the guaranteed savings promotion and the representation that HIKO's rates reflect market factors are materially misleading, because the most important factor in a consumers' decision with respect to purchasing electricity is price (as there is literally no other difference between electricity and natural gas providers) and the potential for the represented savings is the only reason a consumer would switch to HIKO.  SAC ¶ 42.  The SAC also alleges that HIKO failed to disclose that its rates are in fact substantially higher than local utilities' and other ESCOs' rates and that its rates do not in fact reflect market factors.  SAC ¶¶ 32-35, 41.  The SAC also alleges that Plaintiff Chen was injured because he did not receive the promised savings but instead paid substantially more than if he had not become a HIKO customer (SAC ¶ 28) and that both Plaintiffs were injured because the rates they were charged were substantially higher than they would have been if they had been based on the represented factors.  SAC ¶ 41.  It is well settled that misrepresentations and omissions regarding the price of a good or service can form the basis of a claim for injury under Section 349.

*Watts v. Jackson Hewitt Tax Servo Inc.*, 579 F. Supp. 2d 334 (E.D.N.Y. 2008) is particularly instructive.  There, the plaintiffs alleged that they were charged a fee higher than they were lead to believe they would be charged in standard form customer disclosures.  In denying the motion to dismiss, the *Watts* court held that:

> Section 349 is 'meant to empower consumers,' especially 'the disadvantaged' and to even the playing field of their disputes with better funded and superiorly situated fraudulent businesses . . . Plaintiffs here are customers who allege that

they were deceived and overcharged by the second largest tax preparation service in the country . . . The case fits squarely within the consumer protection scope of the statute."

*Id.* at 349.  The Court also rejected Defendant's injury argument: "By demonstrating that the defendants were adding hidden charges to the Tax Preparation Fee, the plaintiffs have made a plausible showing that they were overcharged and therefore injured by the defendants' conduct."

*Id.*  Similarly, Plaintiffs here claim HIKO charged them a rate based on factors other than what was represented (SAC ¶¶ 17-18, 22, 26, 28, 35-36, 41), which resulted in financial injury.  SAC ¶¶ 20-28, 30-31, 41.  These allegations are more than sufficient to plead that Defendant's misrepresentations with regard to price injured Plaintiffs and the proposed class.  *See Dank V. Sears Holding Mgmt. Corp.*, 59 A.D.3d 582,583 (2d Dep't 2009) (denying motion to dismiss proposed class action under section 349 where "[t]he complaint alleges that Sears published a policy promising, in pertinent part, to match the 'price on an identical branded item' . . . Eventually, [the plaintiff] purchased the television at the third Sears  . . . but was denied the $400 lower price offered by [another] retailer.").

Second, Plaintiffs adequately plead that they paid a premium price for electricity and natural gas that was caused by Defendant's misrepresentations and omissions.  It is well settled that plaintiffs need only allege that they paid more for a product or service due to defendants' inaccurate representations to adequately plead injury under Section 349.  *See Jernow v. Wendy's Int'l, Inc.*, No. 07-3971, 2007 U.S. Dist. LEXIS 85104, at *8 (S.D.N.Y. Nov. 15, 2007) (Under Section 349, "a premium could constitute an actual injury compensable under Section 349").[5]

Here, Plaintiffs alleged that the electricity and gas that they purchased from HIKO was exactly the same as electricity and natural gas offered by utilities and other ESCOs.  SAC ¶ 40.

---

[5]  *See also Cox v. Microsoft Corp.*, 809 N.Y.S.2d 480 (N.Y. Sup. Ct. 2005) (finding sufficient allegations of actual injury where plaintiffs alleged that defendant was able to charge inflated prices for its products as a result of its deceptive actions); *Rodriguez v. It's Just Lunch, Int'l*, No. 07-9227, 2010 WL 685009, at *9 (S.D.N.Y. Feb. 23, 2010) (same).

The SAC also alleges that Plaintiffs were injured because Defendant's misrepresentations and omissions caused them to pay HIKO's inflated prices, which are much higher than electric or gas provided by other market participants or the rate HIKO would have charged had it actually based its rates on wholesale costs and market related factors.  SAC ¶¶ 20-24, 30-31.   Thus, Plaintiffs adequately plead injury under the price premium theory.  Moreover, Plaintiffs' allegation that, had they known the truth about the exorbitant rates HIKO would charge them, they would not have switched to HIKO (SAC ¶ 42), is sufficient to demonstrate injury.  *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 406 (E.D.N.Y. 2010) ("Plaintiff alleges that, had she understood 'the true amount of the product,' she 'would not have purchased' it.   Thus, Plaintiff has properly alleged injury.").

Defendant's attempt to analogize the instant case with *Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009) is telling.  *Spagnola* arose in the context of insurance coverage and thus the filed rate doctrine applied to any challenge of the premium prices – as the "doctrine is fully applicable to insurance premiums set by the New York Department of Insurance."  *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 453 (E.D.N.Y. 2012).  The plaintiff in *Servedio* argued that the insurance company's deceptive practice caused him to pay for additional coverage he otherwise would not have purchased.  *Id.* at 452.  The court noted that a common method of satisfying the injury requirement under Section 349 is for the plaintiff to allege "that a deceptive practice caused him to pay more than the good or service he actually received was worth."  *Id.* at 453 (citing *Ackerman v. Coca-Cola, Inc.*, No. 09-0395, 2010 WL 2925955, at *23 (E.D.N.Y. Jul. 21, 2010) ("Injury is adequately alleged under [section 349] by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations.").  Indeed, the court observed that plaintiffs can maintain claims under Section 349 for paying higher prices as a result of the misrepresentation.  *Id.* (citing *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 n.5

(N.Y. 1999)). However, the court held that, due to the existence of the filed rate doctrine, the above theory of injury was unavailable; in other words, in the context of the filed rate doctrine, plaintiffs cannot allege that a deception caused them to pay a higher rate because it is set by regulation. *Id.* But the filed rate doctrine is not applicable here, and neither is *Spagnola*.

### B.    Plaintiffs' Section 349-d Claim Should Proceed.

Defendant's arguments as to why Plaintiffs' Section 349-d claims should be dismissed largely overlap its arguments regarding Section 349.  Def. Mem. at 10-11.  Indeed, Defendant acknowledges that the legislative history of Section 349-d makes it clear that the New York legislature intended for the requirements of a claim under Section 349 "to map onto Section 349-d."  Def. Mem. at 10.  Plaintiffs agree as to this point.

Defendant raises additional policy arguments by analyzing snippets of Section 349-d legislative history in an effort to again argue that Plaintiffs are unable to assert Section 349 claims because they are not residents of New York.  Def. Mem. at 10-11.  Defendant's analysis, however, manages to gloss over various provisions of the legislative history that do not confine Section 349-d's protections solely to New York residents.  For example, the legislative history states that "Subdivision 3 provides that no person selling or offering energy services for or on behalf of an ESCO shall engage in any deceptive acts or practices in such marketing."[6]  Neither the legislative history, nor Section 349-d itself, indicate that Section 349-d's safeguards are only applicable to New York residents.  Indeed, the legislature was likely well-aware of the precedent under Section 349 that explicitly states the territoriality requirement is not intended to function as a *per se* bar to out-of-state claims of deceptive acts leading to transactions within the state both before and after the enactment of Section 349-d.

---

[6] See Declaration of D. Greg Blankinship Exhibit 1, New York State Assembly Mem. In Supp., Bill No. A1558A (2009).

**C.      Plaintiffs' NJCFA Claim Should Proceed.**

If Sections 349 and 349-d do not apply to Defendant's conduct, the New Jersey

Consumer Fraud Act ("NJCFA") does.  The NJCFA was "intended to be one of the strongest in

the country." *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 647 (D.N.J. 2013).  It

is "designed to address sharp practices and dealings in the marketing of merchandise and real

estate whereby the consumer could be victimized by being lured into a purchase through

fraudulent, deceptive or other similar kind of selling or advertising practices."  *Smajlaj v.

Campbell Soup Co.*, 782 F. Supp. 2d 84, 97 (D.N.J. 2011) (citation and quotation omitted).

Courts thus recognize that a motion to dismiss a NJCFA claim must be approached "with

hesitation."  *See Dewey v. Volkswagen*, 558 F. Supp. 2d 505, 525 (D.N.J. 2008), *rev'd on other

grounds by Dewey v. Volkswagen Aktiengesellschaft,* 681 F.3d 170 (3d Cir. 2012).   This

conservative approach to dismissing a NJCFA claim is consistent with its remedial purpose.

Defendant contends that Plaintiffs' NJCFA claim should be dismissed because Plaintiffs

have failed to allege any unlawful conduct.  Not so.  HIKO has taken advantage of the

deregulation of the retail energy markets by luring consumers into switching suppliers with false

promises of a guaranteed savings and a competitive market-based rate that reflects the wholesale

cost of energy.  The Complaint alleges in detail that HIKO's electricity and natural gas rates are

substantially higher than market rates and do not reflect the wholesale cost of electricity or

natural gas; instead, HIKO's rates simply rise, regardless of changes in the market.  As a result,

New Jersey consumers are being fleeced millions of dollars in exorbitant charges.

To state a claim under the NJCFA, a plaintiff need only allege facts sufficient to

demonstrate: "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship

between the unlawful conduct and the ascertainable loss."  *Smajlaj v. Campbell Soup Co.*,

782 F. Supp. 2d 84, 97 (D.N.J. 2011).   The SAC more than adequately alleges facts

demonstrating Defendant's affirmative statements regarding its rates are false, and these deceptive and misleading statements misled Plaintiffs and the putative class into believing they would receive a market based rate that would reflect wholesale costs.  Plaintiffs and the putative class suffered an ascertainable loss measured by the difference in the rate Defendant charged versus a rate based on the promised rate that should have reflected market factors and wholesale costs.  As even a cursory glance at Plaintiffs' long and detailed SAC demonstrates, these allegations are made with sufficient particularity.

### 1.     Plaintiffs Have Alleged Unlawful Conduct.

The NJCFA forbids "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." N.J.S.A. § 56:8-2.  The NJCFA creates three categories of unlawful practices: affirmative acts, knowing omissions, and violations of state regulations.  *Smajlaj*, 782 F. Supp. 2d at 97.  "In an action under the NJCFA, the test is whether the conduct of a defendant has the capacity to mislead the average consumer."  *New York Career Guidance Services, Inc. v. Wells Fargo Fin. Leasing, Inc.*, No. 1705-03, 2005 WL 1252315, at *5 (N.J. Super. Ct. Law Div. May 2, 2005) (collecting cases); *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) (affirmative acts of unlawful conduct do not require a showing of knowledge and intent to deceive).

Plaintiffs' NJCFA claim is as simple as it is compelling.  HIKO represented to Plaintiff Chen and other consumers that for five months, its rates would be below the utilities' rates, and it represented to all consumers that its variable rate will be based on the wholesale costs of electricity and natural gas and other market related factors.  SAC ¶ 15.  But those representations are false and deceptive because HIKO's rates are not in fact based on these factors, a fact supported by Plaintiffs' allegation that Defendants' rates rise even when wholesale prices decline

or remain steady. *Id.* ¶¶ 35. The SAC also pleads that had Plaintiffs and other consumers been informed that switching to HIKO would drastically increase their electric and gas rates, they would have never switched to HIKO. *Id. See Miller v. Am. Family Publishers*, 284 N.J. Super. 67, 663 A.2d 643, 647 (N.J. Super. Ch.1995) (citations omitted) ("[I]t is the 'capacity to mislead' which is at the heart of the definition of an 'unlawful practice.'"); *see also Barry v. Arrow Pontiac, Inc.*, 100 N.J.57, 494 A.2d 804, 810 (N.J.1985) (The questions is "whether the ad itself is misleading to the average consumer, not whether it can later be explained to the more knowledgeable, inquisitive consumer").

Nearly identical claims to those alleged here were sustained by the court in *Wise v. Energy Plus Holdings, LLC*, No. 11-7345 (S.D.N.Y. March 23, 2012). As with this case, the *Wise* Plaintiff alleged that Energy Plus made material misstatements about its rates, including similar misstatements regarding variable market rates, which form the basis of Plaintiffs' claims in this matter. In his decision denying the motion to dismiss, Judge Pauley held that the alleged material misrepresentations and omissions that Energy Plus made about its rates sufficiently stated a claim for violations Section § 349. Specifically, the Court held:

> Viewed together the allegedly deceptive statements plausibly may be read by a reasonable consumer as a representation that Energy Plus' prices are at least relatively comparable both to competitors' prices and to prevailing market rates. Given that the plaintiffs have alleged Energy Plus' rates in fact are two to three times greater and that Energy Plus' rates rise or remain steady during some periods when market prices decline, the plaintiffs have stated a plausible claim that the challenged statements are deceptive. Further, Energy Plus' failure to disclose the alleged truth about its prices plausibly renders its other statements misleading. Accordingly, the plaintiffs have stated a claim based on Energy Plus' omissions.

*See* Transcript of Proceedings in *Wise v. Energy Plus* at 14-16, attached to Blankinship Declaration at Exhibit 2. The fact that Defendant's prices never fall even when market prices and utility rates go down demonstrates that Defendant's representations that its rates are market

based and reflect wholesale prices are false and misleading.  In *Ramirez v. STi Prepaid LLC*, 644

F. Supp. 2d 496, 501 (D.N.J. 2009), the court sustained similar claims relating to the per-minute

charges for calling cards.  *Id.*  There, the court held:

> Defendants' calling cards were marketed in a deceptive manner because they
> failed to adequately disclose the per-minute charges and the fees and costs
> associated with using the cards.  The Complaint include[d] an example of an
> allegedly deceptive calling card.  The combination of this allegation and the
> example calling card [was] sufficient to claim "unlawful conduct" under the
> NJCFA.

*Ramirez*, 644 F. Supp. 2d at 501.  *See also Nelson v. Xacta 3000 Inc.*, No. 08-5426, 2010 WL

19312151, at *6 (D.N.J. May 12, 2010) (allegations that defendant made false representations of

product efficacy satisfied unlawful prong of NJCFA).  Similarly here, HIKO's statements with

respect to the rates it will charge are materially misleading because customers do not receive a

market based price or a rate that reflects wholesale costs.  Instead, consumers are consistently

charged rates that are substantially higher.

Defendant argues that Plaintiffs have failed to allege any unlawful conduct by HIKO.

Def. Mem. at 12.  HIKO is simply incorrect.  First, Defendant overlooks the allegations

contained in the same paragraph it deems insufficient, which states that "Defendant's

misrepresentations and false, deceptive, and misleading statements **with respect to the rates it**

**charges for electricity and gas**" constitute affirmative misrepresentations under the NJCFA.

SAC ¶ 62 (emphasis added).  Throughout the "HIKO Charges Deceptively High Energy Rates"

section of the Complaint, Plaintiffs block quote the relevant representations by HIKO, provide

comparisons of HIKO's rates and the Plaintiffs' local utilities, highlight how HIKO's rates do

not rise and fall in a manner that reflects its rates are tied to the wholesale cost of electricity, and

how these facts are material and misleading.  *See, e.g.*, SAC ¶¶ 15-18, 20-24, 35, 36, 39.

Next, Defendant argues that HIKO's disclosure permits HIKO to charge its customers exorbitant rates that are in no way tied to the market cost of energy.  Def. Mem. at 13.  Again, Plaintiffs adequately allege that an average consumer would find HIKO's representations regarding its rate pricing to be material, deceptive, false and misleading.  SAC ¶¶ 35-43.  At best for Defendant, determining whether an objective reasonable consumer would find HIKO's representations material and misleading is a question of fact and thus improper to decide at the motion to dismiss stage.  *See Leon v. Rite Aid Corp.*, 774 A.2d 674, 678 (N.J. Super. Ct. App. Div. 2001) ("Indeed, a jury would appear especially well suited to determine the impact of an advertisement upon 'an average consumer.'"); *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 126 (D.N.J. 2002) ("Whether Defendants' actions or omissions constituted an unconscionable commercial practice because [Defendant's] disclosure has the capacity to mislead consumers . . . are clearly questions of fact for a jury to answer."); *Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 645 (2002) (noting that "whether an advertisement is misleading presents a question of fact in most cases.").

Defendant's reliance on *Slack v. Suburban Propone Partners,* No. 10-2548, 2010 U.S. Dist. LEXIS 135530 (D.N.J. Dec. 22, 2010), does not help its position.  Def. Mem. at 13-14. *Slack* is readily distinguishable due to contractual differences.  In *Slack*, the agreement did not "disclose the method by which [defendant] calculates prices, the circumstances under which it may impose fees or the amount of such fees" and it stated that fees were "subject to future change based upon market fluctuations and other factors."  *Id.* at *5.  The court noted that defendants retained the right to increase charges in "any amount they deem fit."  *Id.* at 20.

In contest, HIKO does disclose the method by which it promises to calculate rates, namely that they will reflect "the wholesale cost of electricity (including capacity, energy, balancing, settlement, ancillaries), transmission and distribution charges, and other market

related factors, plus all sales and other applicable taxes, fees, charges or other assessments and HIKO's costs, expense and margins."[7]   SAC ¶ 15.   HIKO also promotes a savings guarantee, which states that "HIKO will be 1-7% lower than the utility's price for the first six months of service.   Afterwards, it will be rolled onto a **competitive monthly variable rate**."   SAC ¶ 16 (emphasis added).   These representations do not give Defendant *carte blanche* to charge an arbitrary rate.   Further, Plaintiff Chen was a customer of HIKO during this alleged "guaranteed savings promotion" and his rates were not 1-7% lower than his local utility.   In fact, he was charged eight times the amount his utility charged during the same period.   *Id.* at ¶¶ 19-22.

Plaintiffs have also clearly identified the specific contractual language upon which their claim is based and have alleged in detail how HIKO's pricing is not competitive and does not reflect the wholesale cost of electricity and natural gas based on the specific charges Plaintiffs received.   SAC ¶¶ 15-16, 19-33.   Moreover, Plaintiffs allege that the other identified costs included in HIKO's pricing provision "do not change substantially over time and do[es] not account for the exorbitant rates HIKO charges."   SAC ¶ 38.   At best, Defendant's argument again raises a question of fact that is not properly resolved on a motion to dismiss.   *See Klein v. Budget Rent a Car Sys.*, No. 12-7300, 2013 U.S. Dist. LEXIS 58403, at *10 (D.N.J. Apr. 24, 2013) (finding the question of whether purported disclosures give fair notice of charges is a question of fact and rejecting Defendants' motion to dismiss argument on that basis) (citing *Slack*, 2010 U.S. Dist. LEXIS 135530 at *7).

---

[7] HIKO's natural gas pricing provision is substantially similar, and states pricing will reflect "the wholesale cost of natural gas (including commodity, capacity, storage and balancing), transportation to the Delivery Point, and other market-related factors, plus all applicable taxes, fees, charges or other assessments and HIKO's costs, expenses and margins."   SAC ¶ 15.

###### 2.      Plaintiffs' Allegations Are Based On More Than Breach of Contract.

Defendant argues that HIKO's conduct is tantamount to a breach of contract and, as such, is not actionable under the NJCFA.  Def. Mem. at 14-15.  Again, as established above, Plaintiffs' SAC contain voluminous allegations of deceptive and misleading conduct by HIKO, that HIKO's conduct caused them to pay more for electricity than if they had stayed with their local utility, and that Plaintiffs also seek injunctive relief.  SAC ¶¶ 3, 16-18, 28, 32.

Many of the cases cited by Defendant in support of its argument arise in the insurance coverage context.  Plaintiffs do not dispute that "New Jersey courts have consistently held that the payment of insurance benefits is not subject to the Consumer Fraud Act."  *Fuscellaro v. Combined Ins. Group, Ltd.*, No. 11-723, 2011 U.S. Dist. LEXIS 111470, at *15 (D.N.J. Sept. 29, 2011) (citing *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998) ("The mere denial of insurance benefits to which the plaintiffs believed they were entitled does not comprise an unconscionable commercial practice.")).  Here, Plaintiffs are not making a claim for failure to pay benefits under an insurance contract and thus these cases are inapposite.  Insurance rates are approved by government entities and thus the filed rate doctrine bars the challenge of such rates.  *See, e.g.*, *Weinberg v. Sprint Corp.*, 173 N.J. 233, 243-244, (N.J. 2002) (noting the filed rate doctrine bars money damages in consumer fraud actions where plaintiffs seek to enforce a rate other than the filed rate).

Moreover, the NJCFA was enacted as remedial legislation that is intended to be construed liberally to accomplish the broad purpose of safeguarding the public.  *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 11 (2004).  The purpose of the safeguards under the NJCFA is "not only to make whole the victim's loss, but also to punish the wrongdoer and to deter others from engaging in similar fraudulent practices."  *Id.* at 12 (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 21 (1994)).  Indeed, the "remedy of treble damages under the Act . . . was not intended to

make the defrauded consumer whole, but to punish the wrongdoer and to deter others from engaging in unfair and deceptive commercial practices." *Id.* at 14 (citing *Cox*, 138 N.J. at 21). Plaintiffs do not dispute that a breach of contract is not *per se* unconscionable and does not alone violate the NJCFA. *Cox*, 138 N.J. at 18. Plaintiffs, however, included numerous allegations of deceptive conduct, including alleging sufficient facts that support the inference that HIKO affirmatively misrepresented what rates it would charge Plaintiffs and the putative classes. SAC ¶¶ 15-18, 32-42. Affirmative misrepresentations regarding price are considered unlawful conduct actionable under the NJCFA. *See Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 466-67, (NJ. Super. 2001) (reversing the trial court and holding affirmative representations of having "the lowest and best prices" on pharmaceuticals satisfied the NJCFA's affirmative misrepresentation standard).

### D.     Plaintiffs' Breach Of Contract Cause Of Action Should Proceed.

HIKO is not moving to dismiss Plaintiffs' claim that HIKO failed to keep its promise that it would "guarantee savings," by using rates that "will be 1-7% lower than the utility's price for the first six months of service." Accordingly, even if the Court agreed with HIKO's arguments -- and it should not -- Plaintiffs' breach of contract claim will proceed.

A complaint for breach of contract under New York law need allege only: "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Plaintiffs readily meet these requirements. Plaintiffs have alleged that they entered into valid contracts with HIKO (SAC at ¶¶ 71-73); that they performed their obligations under the contract (*Id.* at ¶ 74); that HIKO breached the agreement "because it charged a rate that was not based on the factors upon which the parties agreed the rate would be based and failed to

provide the guaranteed savings it had promised" (*Id*. at ¶ 75); and that Plaintiffs and class were damaged as a results of HIKO's breach.  *Id*. at ¶¶ 76-77.  Nothing more is required.

The applicable HIKO contracts, to which Plaintiffs entered, expressly state that the rate for natural gas will be based on "the wholesale cost of natural gas (including commodity, capacity, storage and balancing), transportation to the Delivery Point, and other market-related factors, plus all applicable taxes, fees, charges or other assessments and HIKO's costs, expenses and margins." SAC ¶ 15.  The parties also agreed that the rate for electricity will be based on "the wholesale cost of electricity (including capacity, energy, balancing, settlement, ancillaries), transmission and distribution charges, and other market related factors, plus all sales and other applicable taxes, fees, charges or other assessments and HIKO's costs, expense and margins." *Id.*

Plaintiffs allege Defendant failed to perform its obligations because it charged a rate for natural gas and electricity that was not based on the factors upon which the parties agreed, namely the wholesale costs for gas and electricity and market related factors.  *Id.* at ¶¶ 35-43.  As a result, Plaintiffs suffered damages by paying higher rates than they would have been charged had HIKO honored its contractual obligations.

HIKO argues that Plaintiffs' breach of contract claim should be dismissed, "insofar as it relates to HIKO's alleged failure to charge prices reflecting market-related factors," because HIKO also "stated that it would consider its 'costs, expenses and margins.'"  Def. Mem. at 15.  But Plaintiff alleges that "[t]he other costs for capacity, energy, balancing, settlement, ancillaries, commodity, storage, transmission and distribution charges, sales and other applicable taxes, fees, charges or other assessments and HIKO's costs, expense and margins do not change substantially over time and do not account for the exorbitant rates HIKO charges."  SAC ¶ 38.  Thus, HIKO is left to argue that its outrageous rates were justified because the contract allowed it to charge whatever "margin" (*i.e.*, profit) it wished, and therefore it was allowed to charge rates eight times

higher than the local utilities.  In other words, HIKO concedes that it has violated the duty of good faith and fair dealing by gouging Plaintiffs so that it could pad its margins.

### E.  Plaintiffs Sufficiently State A Claim For Breach Of The Duty Of Good Faith And Fair Dealing.

HIKO moves to dismiss Plaintiffs' claim for breach of the duty of good faith and fair dealing because it alleges that Plaintiffs' breach of contract claim is "not viable," and plaintiff is seeking to "rewrite the contract and impose new terms."  Def. Mem. at 16.  Not so.

"In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance."  *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.,* 244 F.R.D. 204 (S.D.N.Y. 2007) (citing *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 773 N.E.2d 496 (2002). "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979, 663 N.E.2d 289, 291 (1995) (citing *Tedeschi v. Wagner Coll.*, 49 N.Y.2d 652, 659, 427 N.Y.S.2d 760, 404 N.E.2d 1302 (1980)). "Even when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1575 (2d Cir.1994); *see also Carvel Corp. v. Diversified Mgmt. Group, Inc.*, 930 F.2d 228, 231 (2d Cir. 1991); *Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 502 (2d Cir.1989).

Plaintiffs and HIKO entered into valid agreements.  The fruits of those contracts were that Plaintiffs' energy rates would be based on the wholesale cost of energy and prevailing market conditions.  Plaintiffs did not agree to HIKO's ability to unilaterally inflate its rates based on *any other factors*, and they certainly did not agree that HIKO's rates could be eight times higher than the rates of PSE&G.  The specific act of charging Plaintiffs gas and electricity rates

that were not determined by the factors in the agreement destroys Plaintiffs' rights under the contract and is a breach of the duty of good faith and fair dealing.

Defendant's argument that its rates are somehow justified by disclosing that its rates will account for "costs, expenses and margins" does not alter HIKO's obligation to act in good faith. Plaintiffs do not dispute that HIKO includes such factors in its pricing.  However, HIKO cannot use the right to account for costs or make a profit as an excuse to gouge consumers by charging up to eight times more than utilities, particularly when the reasonable expectations of the parties is that HIKO will charge a rate commensurate with wholesale costs and market conditions.[8]

Taking HIKO's argument to its logical conclusion demonstrates its irrationality. Essentially, HIKO argues that by inserting discretionary terms into the contract it is permitted to act with impunity.  If HIKO's argument is credited, it would be entitled to increase its profit margin to 1,000%, charging customers thousands of dollars per month for electric and gas service.  Of course, such a conclusion would be absurd and eviscerate the expectations of the parties who entered into an agreement based on the understanding that Plaintiffs would save money and HIKO would base its rates on wholesale costs of energy and market related factors.

As previously discussed, HIKO must exercise its discretion in good faith, *Dalton*, 87 N.Y.2d at 389, and Plaintiffs have alleged that it has not.  Accordingly, Plaintiffs' claim for breach of the duty of good faith and fair dealing, which under New York law is encompassed within it breach of contract claim, should proceed.

### F.    Plaintiffs Adequately State A Claim For Unjust Enrichment.

Defendant does not contest that Plaintiffs' claim for unjust enrichment is adequately plead, nor could it.  Instead, Defendant argues that a claim for unjust enrichment may not lie

---

[8] Again, even assuming *arguendo* that HIKO was correct (and it is not), whether or not its "costs, expenses and margins" properly accounted for the exorbitant rates charged is a fact question that is not appropriately decided at the pleading stage.

where there is an express contract between the parties.   Def. Mem. at 16-17.   *Stern v. H. Dimarzo, Inc.*, 19 Misc.3d 1144(A), 867 N.Y.S.2d 20 (N.Y. Sup. Ct. June 11, 2008), is instructive:

> It is most certainly true that unjust enrichment is a quasi-contract claim as it is an obligation that the law creates in the absence of any agreement. Thus, the existence of a valid and express agreement with respect to the same subject matter will preclude a claim for unjust enrichment. However . . . Defendants have not answered the Complaint and, accordingly, it cannot be determined whether they contest the existence of contract or contest the terms of the contract . . . Thus, Plaintiffs are not presently required to elect between a contract or quasi-contract remedy . . . Clearly, Plaintiffs cannot be fairly required to put all their eggs in a contract basket and run the risk that Defendants will deny the existence of the contract. Accordingly, this branch of the application should be denied.

867 N.Y.S.2d 20, at *17 (citations omitted).   Here, Plaintiffs' claim for unjust enrichment is similarly made in the alternative.   Since it would be inappropriate to dismiss this claim at the pleading stage, HIKO's motion seeking the same should be denied.[9]

## II.   HIKO'S MOTION TO STRIKE THE CLASS ALLEGATIONS SHOULD BE DENIED.

Under Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."   "Motions to strike are disfavored," *Roe v. City of New York,* 151 F. Supp. 2d 495, 510 (S.D.N.Y.2001), and the Court must "deem the non-moving party's well-pleaded facts to be admitted, draw all reasonable inferences in the pleader's favor, and resolve all doubts in favor of denying the motion to strike."   *Diesel Props S.r.L. v. Greystone Bus, Credit II LLC,* No. 07 Civ. 9580, 2008 WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008).   Motions to strike class allegations are particularly disfavored, and regularly denied, in this Circuit because the determination of whether a class may be maintained is highly factual. As the court in *Chen-Oster v. Goldman, Sachs & Co.* held, in denying the motion to strike:

---

[9] Likewise, if HIKO violated NYGBL §349-d, the contracts will be void.   N.Y. Gen. Bus. Law § 349-d(8).

> Motions to strike are generally looked upon with disfavor and a motion to strike class allegations is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification. Generally speaking, then, motions of this kind are deemed procedurally premature.

877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (citations and internal alterations omitted).[10] There is only one exception to this rule: "a motion to strike that addresses issues separate and apart from the issues that will be decided on a class certification motion is not procedurally premature." *Chen-Oster*, 877 F. Supp. 2d at 117. *See also Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) ("[S]uch a motion may be entertained if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear.") (citations omitted).[11]

### A. Plaintiffs Adequately Plead That A Class Action Is The Superior Method For Resolving The Proposed Class's Private Claims.

HIKO argues that the Plaintiffs' class allegations should be stricken because the New Jersey state action filed by the Attorney General ("NJ Government Action") and HIKO's own

---

[10] *See also Schaefer v. Gen. Elec. Co.*, No. 07-0858, 2008 WL 649189, at * 6 (D. Conn. Jan. 22, 2008) ("GE's motion to strike includes several assumptions and premature conclusions about the factual basis for Schaefer's class allegations. The Court finds it improper to take such assumptions at face value and inappropriate to make a factual determination based on the limited record at this stage in the litigation."); *Mazzola v. Roomster Corp.*, 849 F.Supp.2d 395, 410 (S.D.N.Y. 2012) (collecting cases and holding that "district courts in this Circuit have frequently found that a determination whether the Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination."). *C.f., Parker v. Time Warner Entm't Co., L.P.,* 331 F.3d 13, 21 (2d Cir. 2003) ("The difficulty we have with these conclusions is that they are based on assumptions of fact rather than on findings of fact. The District Court precluded any class discovery and even the filing of a motion for class certification. Thus, it remains unknown what class Parker would have sought to certify and the numbers of potential class members in that proposed class.").

[11] Cases cited by Defendant are inapposite because they involve complaints that are egregiously deficient; they do not support a motion to strike simply because the Defendant believes it will have meritorious arguments with respect to class certification. *See Tongo v. Derwinski*, No. 90-4986, 1991 WL 243421, at *2 (S.D.N.Y. Nov. 14, 1991) (granting defendant's motion to strike class allegations because the allegations "are so vague and confusing that it is difficult to determine which potentially affected persons are within or without the class"); *PFT of Am., Inc. v. Tradewell, Inc.*, No. 98-6413, 1999 WL 179358, at *2 (S.D.N.Y. Mar. 31, 1999) (granting motion to strike class action claims because plaintiff fails to identify a single member of the purported class other than itself); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 224 (D.N.J. 2003) (striking class allegations because a proposed defendant subclass included members as to whom plaintiff enjoyed no cause of action.).

dispute resolution process are superior methods for consumers to adjudicate their claim. Def. Mem. at 18-21. However, it is well settled that a class action does not lack superiority because there is a parallel government suit, particularly where, as here, there has been no resolution of the NJ Government Action and there is no risk that the class action will interfere with the government's case.

In re Beacon Assoc. Litig., No. 09-777, 2012 WL 1569827 (S.D.N.Y. May 3, 2012) is particularly instructive. There, Judge Sand granted the plaintiff's motion for class certification, notwithstanding a parallel suit brought by the Secretary of Department of Labor:

> Plaintiffs do not seek additional relief on top of already provided government settlement of their claims. Nor do they in any other way appear to threaten or disturb the government's enforcement efforts . . . We therefore conclude that the existence of the parallel government action does not bar certification of the class under Rule 23(b)(3).

Id. at *13. Judge Sand also recognized that if the court precluded class certification whenever there exists a parallel government action, it "could threaten the 'interlocking, interrelated, and interdependent . . . scheme' of public and private enforcement," id., and would result in unnecessary antagonism between government action and private class action suits. Id.[12]

Judge Sand distinguished all of the cases upon which the defendant in Beacon relied on the basis that they either involved private plaintiffs' attempts to obtain relief greater than the government had already achieved, or because they threatened in a concrete manner the government's enforcement action. Beacon at * 12-13. So too here. Defendant relies on Wechsler v. Southeastern Props., Inc., 63 F.R.D. 13 (S.D.N.Y. 1972), in arguing that it is "well-established" that the mere existence of a parallel government suit precludes the superiority of a

---

[12]    See also Makaeff v. Trump Univ., LLC, No. 10-0940, 2014 WL 688164, at * 19 (S.D. Cal. Feb. 21, 2014) (holding that class action is the superior method even when the New York Attorney General has filed a case because the Attorney General lawsuit had not yet resulted in restitution to the class members); Mooney v. Allianz Life Ins. Co. of North America, 244 F.R.D. 531, 538 (D. Minn. 2007) (granting class certification despite the fact that Minnesota Attorney General initiated litigation against defendant).

class action, Def. Mem. at 19.   But the *Beacon* court held that in *Wechsler,* "the government action had concluded by the time the class action commenced, and it was in the context of relief already obtained that the court denied certification."   2012 WL 1569827, at *12.   Def. Mem. at 19.   Similarly, in *Kamm v. Cal. City Dev. Co*., 509 F.2d 205 (9th Cir. 1975), the state action had already reached a settlement and a permanent injunction and final judgment had been entered. *Id*. at 208.   Here, the NJ Government Action has not concluded, nor has it provided any relief to class members.   In fact, the NJ Government Action was only commenced on May 23, 2014, almost two and a half months **after** Plaintiff Chen commenced this action on March 14, 2014. The NJ Government Action is at its preliminary stage and therefore does not impact the superiority of maintaining this action as a class action.

Other cases upon which Defendant relies are similarly inapplicable because those courts determined (at the class certification stage) that a Rule 23 class posed a direct threat to the success or enforcement of the government action.   *See Thornton v. State Farm Mut. Auto Ins. Co*., No. 66-18, 2006 WL 3359448, at *12-13 (N.D. Ohio Nov. 17, 2006) (finding that where a comprehensive settlement had already been reached with 49 state attorneys general, "a federal class action would duplicate and possibly negate action taken on the state level" because it would potentially undermine the settlement); *Brown v. Blue Cross & Blue Shield of Michigan, Inc.*, 167 F.R.D. 40, 46 (E.D. Mich. 1996) (denying certification of a class that threatened to unravel the conditional settlement that Michigan's State's Insurance Commissioner and Attorney General had reached with defendant).

*Ostrof v. State Farm Mut. Auto. Ins. Co*., 200 F.R.D. 521 (D. Md. 2001) is likewise unpersuasive.   Indeed, the government investigation in *Ostrof* predated the proposed private class action by two years.   Here, however, Plaintiffs filed their action almost two and a half months before the New Jersey Attorney General initiated its action; indeed, the case at bar appears to

have precipitated the NJ Government Action.  In *Ostrof,* there were also established procedures for insureds to seek relief and the agency in question had indicated that it would order such relief.  *Id.* at 532.  There is no such indication here.

Nor is HIKO's alleged dispute resolution process superior to a class action.  First, as Plaintiff Sasso's experience demonstrates, that resolution process does not lead to refunds for all class members, as he has not been offered a refund.  Second, as Plaintiff Chen's experience demonstrates, HIKO does not fully reimburse those customers to whom it offers some level of relief; to the contrary, HIKO uses this process to further mislead its customers as to the proper rate it should be charging.  SAC ¶¶ 25-26.  Third, requiring individuals to utilize Defendant's unsupervised and patently insufficient process will be a substantial burden on class members, particularly in comparison to the Rule 23 class procedure.[13]

The Court should also deny Defendant's request to stay this action.  Courts generally give weight to a plaintiff's strong interest in proceeding with litigation.  *See Lasala v. Needham & Co.,* 399 F. Supp. 2d 421, 428 (S.D.N.Y. 2005) ("Courts are generally reluctant to stay proceedings because they are concerned with vindicating the plaintiff's right to proceed with its case.") (citing *An Giang Agric. & Food Import Export Co. v. United States,* 350 F. Supp. 2d 1162, 1164 n. 3 (Ct. Int'l Trade 2004) ("[U]nderpinning much of the case law [in this area] --

---

[13]   Defendant's citation *to In re Wolrdcom*, 343 B.R. 412 (Bankr. S.D.N.Y. 2006) in support of the claim that HIKO's dispute resolution process is superior to a class action is unavailing.  There, the court concluded that a class action was not necessary because the "superiority of the class action vanishes when the other available method is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost."  *Id.* at 429 (citations omitted).  While the court did also mention WorldCom's extensive customer service options available to resolve billing disputes (facts which are not before the Court on this motion), it did so in the context of the existence of the bankruptcy proceedings.  *Id.*  In other words, WorldCom customers dissatisfied with customer service's resolution could turn to the bankruptcy court; absent the proposed class action here, though, no such backstop exists to protect consumers dissatisfied with HIKO's allege resolution process.  Tellingly, HIKO fails to cite any supporting authority for the proposition that the mere existence of a corporate dispute resolution process renders class actions an inferior means of adjudicating disputes.

implicitly, if not explicitly -- is a concern for the rights of assertedly aggrieved plaintiffs to seek redress in the courts.")).[14]

Courts balance "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest," when determining whether to stay an action. *Am. S.S. Owners v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 482 (S.D.N.Y. 2007) (citing *GTFM, Inc. v. Park*, No. 02-7020, 2002 WL 31890940, *2 (S.D.N.Y. Dec. 30 2002). The burden is on the movant to "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id*. Defendant has not met its burden of showing that a stay is warranted in this case, much less make out a clear case of "hardship or inequity."[15]

Generally, "where there are two competing lawsuits, the first suit should have priority." *Ft. Howard Paper Co. v. William P. Witter, Inc.,* 787 F.2d 784, 790 (2d Cir.1986) (citations and quotation marks omitted). This action was filed earlier than the NJ Government Action and therefore should not be stayed due to its pendency. Furthermore, Plaintiffs have a substantial interest in proceeding expeditiously with this litigation, and they will be prejudiced because a stay would delay their right to pursue recovery. *See Greystone CDE, LLC v. Santa Fe Pointe, L.P.,* No. 07- 8377, 2008 WL 482291, at *2 (S.D.N.Y. Feb.20, 2008) (denying stay when it would prejudice plaintiff from seeking payment claims against defendants). Defendant does not

---

[14]  *See also Hicks v. City of New York,* 268 F. Supp. 2d 238, 241 (E.D.N.Y.2003) ("[A]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim").

[15]  Defendant's unsupported argument that the NJ Government Action is superior because "there would be no need for significant attorneys' fees to be taken out of recovery" is unpersuasive. Plaintiffs' attorneys fees will be paid separate and apart from the class' recovery under the fee shifting provisions of either N.Y GBL § 349 or the NJCFA. Moreover, any fees granted under Rule 23 will be reasonable, as this Court will no doubt ensure.

demonstrate unfair prejudice to HIKO, and merely arguing that litigation will be expensive is insufficient to justify a stay.  *See Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.,* 486 F. Supp. 1118, 1119 (S.D.N.Y.1980) ("[A] policy of freely granting stays solely because a litigant is defending simultaneous multiple suits would threaten to become a constant source of delay and an interference with judicial administration.").  Nor should this Court be concerned with the fees Defendant will incur.  *See Anne Arundel County v. Halle Dev.,* 408 Md. 539, 572, 971 A.2d 214 (2009) (holding that defendant's "burden is a secondary consideration in the 'superiority' analysis.").[16]

Indeed, the proposed class action cannot impede the NJ Government Action because an award of damages in this case will not prevent the New Jersey Attorney General from seeking criminal and civil fines, injunctive relief, and disgorgement of profits.  As the New York Court of Appeals held in *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 125-26, 894 N.E.2d 1 (2008), a settlement of class members' damages claims does not prejudice state attorneys general owing to other available remedies they can seek, including disgorgement:

> Our holding does not, however, substantially prejudice the public interest served by the Attorney General in pursuing this action.  Indeed, respect for the finality of the *Allec* settlement still permits the Attorney General to seek restitution on behalf of those not bound by the settlement and for the time periods not embraced therein. In addition, the claims for injunctive relief, civil penalties, and costs remain undisturbed.  And, as Supreme Court noted, the Attorney General might be able to obtain disgorgement - an equitable remedy distinct from restitution - of profits that respondents derived from all New York consumers, whether within the *Allec* settlement class or not.

*Id.* (citing *Securities & Exch. Commn. v Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997) ("As an exercise of its equity powers, the court may order wrongdoers to disgorge their fraudulently

---

[16] *See also County of Stanislaus v. Pacific Gas & Elec. Co.,* No. CF–F93–5866–OWW, 1994 WL 706711, *4 (E.D. Cal. 1994) (holding that there was no proof that the California Public Utilities Commission was superior to judicial proceedings because "[a]lthough judicial proceedings will require a considerable amount of time and judicial resources, those resources must be expended whether the case proceeds as a class action or by named plaintiffs").

obtained profits"); *Official Comm. of Unsecured Creditors of WorldCom, Inc. v Securities & Exch. Commn.*, 467 F.3d 73, 81 (2d Cir. 2006)).[17]

Here, there is no reason that Plaintiffs' proposed class action cannot proceed without impeding the NJ Government Action. To the contrary, this Court is well equipped to evaluate the extent to which Plaintiffs and the class were deprived of the benefit of their bargain so that damages can be swiftly provided to the class. At the same time, the New Jersey Attorney General can pursue the more complicated task of assessing criminal and civil penalties and other relief it deems appropriate.

### B.     Plaintiffs Sufficiently Plead The Commonality Requirement of Rule 23(a)(2).

Defendant's argument with respect to commonality demonstrates the impropriety of its motion to strike. In fact, Plaintiffs' allegations with regard to the Rule 23(a)(2) requirement are more than adequate. Plaintiffs have alleged that all class members received contracts that included the exact same representation from HIKO regarding its electricity and gas rate. SAC ¶¶ 15; 46(c)(i-ii). Plaintiffs also alleged in great detail that the question of whether HIKO honored its savings guarantee raises issues common to the class (to wit, whether HIKO did in fact provide the promised savings). SAC ¶¶ 17-18, 35-36, 41, 46(c)(iii-v). Plaintiffs also sufficiently plead that common issues of law exist because the determination of whether HIKO violated N.Y. G.B.L. § 349 and N.Y. G.B.L. § 349-d or N.J.S.A. § 56:8-1 *et seq.* will apply to all class members' claims. SAC ¶ 40-42, 46(c)(vi). These common issues are more than sufficient under Rule 23. *See In re IndyMac Mortgage–Backed Sec. Litig.*, 286 F.R.D. 226, 233 (S.D.N.Y. 2012) ("Commonality is satisfied where a single issue of law or fact is common to the class.") (citing

---

[17] *C.f, United States v. Katz*, 10 CIV. 3335, 2011 WL 2175787 (S.D.N.Y. June 2, 2011) ("The general rule is that governmental agencies are not bound by private litigation when the agency's action seeks to enforce a federal statute that implicates both public and private interests."); *In re Beacon Associates Litig.*, 2012 WL 1569827, at * 13  ("In the event that the private plaintiffs prevail on their claims against Defendants, the Secretary will not be barred by the doctrine of res judicata from pursuing her action.") (citation omitted).

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2256 (2011) ("[E]ven a single common question will do.")).[18]  Thus, the motion to strike based on a lack of adequate commonality pleading should be denied.  *See Chen-Oster*, 877 F. Supp. 2d at 117 ("Goldman's objections address Rule 23(a)(2)'s commonality requirement, which is exactly the sort of issue that would be litigated and decided in the context of a motion for class certification.").

### C.   Plaintiffs Sufficiently Plead Predominance Under Rule 23(b)(3).

Defendant's argument that issues with respect to the voluntary payment doctrine will preclude class certification (Def. Mem. at 23-24) is unpersuasive.  First, the voluntary payment doctrine raises questions of fact that are not properly addressed absent a fully-developed factual record.  The voluntary payment doctrine "bars recovery of payments voluntarily made 'with full knowledge of the facts.'"  *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 38 (E.D.N.Y. 2008) (granting motion for class certification).   Whether Plaintiffs and the class had "full knowledge of the facts" concerning the extent to which HIKO was overcharging is a question of fact not germane on this motion.  As the Second Circuit held, in reversing dismissal based on the voluntary payment doctrine:

> Although the voluntary payment doctrine may ultimately bar Spagnola's breach of contract claim, we decide that it is too early in this case to conclusively answer that question . . . The pleadings before the district court do not establish whether Spagnola knew or should have known that the increased amounts were not based on current costs and values, and Spagnola was not required to preemptively plead facts refuting the voluntary payment doctrine. Thus, drawing all reasonable inferences in Spagnola's favor, we conclude that the voluntary payment doctrine cannot stand at this time as an alternate basis for dismissal of Spagnola's claim.

*Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009) (citing *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) (a plaintiff is not required to include facts in complaint in anticipation of

---

[18]  Defendant's reliance on *In re Pradaxa (Dabigatran Etexilate) Products Liab. Litig*., MDL 2385, 2013 WL 3791509 (S.D. Ill. July 18, 2013) for the proposition that threadbare class action allegations justify a motion to strike is inapposite.  The *Pradaxa* court granted the motion to strike without prejudice because the plaintiff literally just recited the standards for class certification, with no attempt (unlike Plaintiffs here) to identify the actual common issues or to specifically define the class.  *Id*. at *4, n. 2.

affirmative defense).   Thus, striking Plaintiffs' class allegations "in the absence of any class discovery, would be 'based on assumptions of fact rather than on findings of fact,' and 'it remains unknown what class [the plaintiff will seek] to certify.   Although class discovery may fail to resolve Chenensky's predominance problems, it may also inform the drawing of class boundaries that obviate the need for individual proof.   It is simply too soon to tell, and this Court will not speculate as to boundaries of the class that Chenensky may ultimately seek to certify.'"   *Chenensky v. New York Life Ins. Co.*, No. 07-11504, 2011 WL 1795305, at *4 (S.D.N.Y. Apr. 27, 2011) (denying motion to strike and citing *Parker v. Time Warner Entm't Co.,* 331 F.3d 13, 21 (2d Cir. 2003) (internal citations and alterations omitted).[19]

Second, even if the voluntary payment doctrine is germane to this case, its application will be uniform across the class and therefore amenable to class resolution.   Defendant's argument is simple: Plaintiffs allege that they were promised a rate that would be lower than the local utilities or a rate based on the promised factor, and they should have known that HIKO was gouging them when they received their bills.   Such a defense (while infirm) would be uniform across the class, and is therefore no impediment to certification.

Indeed, courts regularly grant certification when issues related to voluntary payment are common to the class.   *See Dupler*, 249 F.R.D. at 47 (E.D.N.Y. 2008) (granting class certification when defendant raised the voluntary payment doctrine and holding that "even assuming arguendo that the voluntary payment issue related to [plaintiff] is unique in its application to this

---

[19] Not surprisingly, cases cited by Defendant for the proposition that voluntary payment precludes class certification were decided after the parties had developed a factual record.   *See Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49 (2004) (decision on motion for class certification); *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 91 (S.D.N.Y. 2010) (decision on class certification following discovery regarding class issues); *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y. 2006) (decision on motion for class certification after "extensive discovery").

case, the Court does not view this potential factual issue as so complex that it will threaten to become the focus of the litigation or affect her ability to act in the best interest of the class.").[20]

Nor does HIKO's alleged dispute resolution process elevate individual issues over common questions.  Plaintiffs claim that despite HIKO's reimbursement to Plaintiff Chen in March, HIKO still overcharged Plaintiff because HIKO's rate still did not represent the savings HIKO promised Plaintiff Chen.  SAC ¶ 26.  The question of whether class members were reimbursed and therefore are not owed relief from HIKO is a question of damages over which the common issue of whether HIKO is liable to the class predominates.  *See In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 139 (2d Cir. 2001) ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.") (superseded by statute on other grounds).[21]

Defendant's alternative motion to strike Plaintiffs' class allegations should be denied.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that Defendant's motion to dismiss, or in the alternative, to strike class allegations be denied.

---

[20] *See also Miller v. Optimum Choice, Inc.,* No. DKC 2003–3653, 2006 WL 2130640, at *7 (D. Md. July 28, 2006) ("Because the affirmative defenses are common across the putative class members, the defenses would not operate to destroy the predominance of common questions across the class, but would instead provide an additional link of commonality between the class members."); *Massei v. Money Store*, 288 F.R.D. 45, 69 (S.D.N.Y. 2012) (granting class certification when the voluntary payment doctrine defense will affect every member of the class and "[r]esolving the application of voluntary payment doctrine as a common issue will be more efficient, not less.").

[21] *See also Bolanos v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 148 (S.D.N.Y. 2002) ("The significant difference among the class members . . . relates to the level of damages . . . Such differences are generally manageable."); *Sykes v. Mel Harris & Associates, LLC*, 285 F.R.D. 279, 293 (S.D.N.Y. 2012) ("[S]hould defendants be found liable on some or all of these claims, individual issues may exist as to causation and damages . . . This, however, does not preclude a finding of predominance under Rule 23(b)(3).").

Dated: August 28, 2014
     White Plains, New York

By:    */s/ Todd S. Garber*
        D. Greg Blankinship
        Todd S. Garber
        Jeremiah Frei-Pearson
        Shin Y. Hahn
        **FINKELSTEIN, BLANKINSHIP,**
        **FREI-PEARSON & GARBER, LLP**
        1311 Mamaroneck Avenue
        White Plains, New York 10605

        Matthew R. Mendelsohn
        David A. Mazie (*pro hac vice* forthcoming)
        Adam M. Epstein (*pro hac vice* forthcoming)
        **MAZIE SLATER KATZ & FREEMAN, LLC**
        103 Eisenhower Parkway
        Roseland, New Jersey 07068

        Joseph G. Sauder (*pro hac vice* forthcoming)
        Matthew D. Schelkopf (*pro hac vice* forthcoming)
        Benjamin F. Johns (*pro hac vice* forthcoming)
        Joseph B. Kenney (*pro hac vice* forthcoming)
        **CHIMICLES & TIKELLIS LLP**
        One Haverford Centre
        361 West Lancaster Avenue
        Haverford, PA 19041

        *Attorneys for Plaintiffs and the putative class*