**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re HIKO ENERGY LLC Litigation | **Civil Action No. 14-01771** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**UNCONTESTED MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES**
**AND EXPENSES, AND NAMED PLAINTIFFS' ENHANCEMENT AWARDS**

## TABLE OF CONTENTS

Page No.

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND OF THE LITIGATION..........................................................4

III. SUMMARY OF THE SETTLEMENT ...............................................................8

IV.  STANDARD FOR APPROVAL OF A CLASS ACTION SETTLEMENT ....................10

V.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............................11

      A.  The Settlement Is Procedurally Fair ....................................................11

      B.  The Settlement Is Substantively Fair ...................................................12

            1.  The Actions Are Complex And Will Be Expensive And Lengthy.................12

            2.  The Reaction Of The Class Was Overwhelmingly Positive...........................14

            3.  The Current Stage Of The Instant Litigation And The
               Extensive Discovery That Has Occurred Favors Final Approval...................17

            4.  Plaintiffs Face Substantial Hurdles In Establishing Liability.........................18

            5.  Plaintiffs Face Substantial Hurdles In Proving Damages...............................18

            6.  Maintaining The Class Action Through Trial May Be Challenging ...............19

            7.  The Defendant May Not Be Able To
               Withstand A Substantially Greater Judgment..................................................20

            8.  The Settlement Amounts Are Reasonable In Light Of The Best
               Possible Recovery And In Light Of All The Attendant Risks Of Litigation...21

VI.  NOTICE WAS PROVIDED IN THE BEST PRACTICABLE MANNER...........................23

VII. THE COURT SHOULD CERTIFY THE CLASS.................................................24

VIII. THE COURT SHOULD APPROVE THE REQUESTED
      AWARD OF ATTORNEYS' FEES TO BE PAID BY HIKO TO CLASS COUNSEL.......24

A.  Class Counsel Is Entitled To Compensation.....................................................24

B.  HIKO Will Pay Class Counsel's Fees At No Cost To The Class...................26

C.  The Second Circuit Has Approved Both The Percentage Method
    And The Lodestar Method, But The Percentage Method Is Preferred ...........28

D.  The Requested Fee Is Justified Under The Percentage Method .....................29

    1.  The Full Value Of The Settlement Fund Available Is Considered .............29

    2.  The Fee Award Is Supported By The *Goldberger* Factors ........................30

        a.  The Time And Labor Expended By Counsel.......................................31

        b.  The Magnitude And Complexity Of The Litigation ...........................32

        c.  The Risk Of The Litigation.................................................................33

        d.  The Quality Of Representation ...........................................................34

        e.  The Requested Fee In Relation To The Settlement ............................35

        f.  Public Policy Considerations .............................................................36

E.  The Fee Is Justified Under The Lodestar/Multiplier Method .........................38

F.  The Reaction Of The Class Is Overwhelmingly Favorable ............................40

IX.     THE EXPENSES INCURRED ARE REASONABLE AND
        WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ...........................41

X.      NAMED PLAINTIFF ENHANCEMENT AWARDS ....................................................42

CONCLUSION…………………………………………………………………………..43

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Aros v. United Rentals, Inc.,*
  2012 WL 3060470 (D. Conn. July 26, 2012) .................................................. 30

*Beckman v. KeyBank, N.A.,*
  2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013) .................................................. 25

*Blessing v. Sirius XM Radio Inc.,*
  2012 WL 6684572 (2d Cir. 2012) .................................................................. 28

*Boeing Co. v. Van Gemert,*
  444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) .......................... 24, 30

*Cagan v. Anchor Sav. Bank FSB,*
  1990 WL 73423 (E.D.N.Y. May 22, 1990) .................................................... 16

*Cavalieri v. General Elec. Co.,*
  2009 WL 2426001 (N.D.N.Y. Aug. 6, 2009) .................................................. 27

*Chambery v. Tuxedo Junction, Inc.,*
  2014 WL 3725157 (W.D.N.Y. July 25, 2014) ................................................ 16

*Charron v. Pinnacle Grp. N.Y. LLC,*
  874 F. Supp. 2d 179 (S.D.N.Y. 2012) .......................................................... 14

*Chin v. RCN Corp.,*
  2010 WL 3958794 (S.D.N.Y. Sept. 8, 2010) ................................................ 40

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) .................................................................. 11, 21

*Clark v. Ecolab Inc.,*
  2010 WL 1948198 (S.D.N.Y. May 11, 2010) ............................................ 26, 36

*Cohen v. Chilcott,*
  522 F. Supp. 2d 105 (D.D.C. 2007) .............................................................. 22

*Cohn v. Nelson,*
  375 F. Supp. 2d 844 (E.D. Mo. 2005) .......................................................... 28

*County of Suffolk v. Long Island Lighting Co.,*
907 F.2d 1295 (2d Cir. 1990) ................................................................. 15

*Dahingo v. Royal Caribbean Cruises, Ltd.,*
312 F. Supp. 2d 440 (S.D.N.Y. 2004) ..................................................... 30

*deMunecas v. Bold Food, LLC,*
2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ......................................... 39

*Dornberger v. Metropolitan Life Ins. Co.,*
203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................ 43

*Dupler v. Costco Wholesale Corp.,*
705 F. Supp. 2d 231 (E.D.N.Y. 2010) ..................................................... 26

*D'Amato v. Deutsche Bank,*
235 F.3d 78 (2d Cir. 2001) (2d Cir. 2001) ....................................... 10, 11

*Elliot v. Leatherstocking Corp.,*
2012 WL 6024572 (N.D.N.Y. Dec. 4, 2012) .......................................... 42

*Ferrington v. McAfee, Inc.,*
2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) ........................................... 15

*Frank v. Eastman Kodak Co.,*
228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................... 13

*Hamilton v. SunTrust Mortg. Inc.,*
2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) .......................................... 15

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ................................................................. 28

*Hayes v. Harmony Gold Min. Co. Ltd.,*
509 Fed. Appx. 21 (2d Cir. 2013) ........................................................... 12

*Hernandez v. Merrill Lynch & Co., Inc.,*
2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ............................. 26, 36, 39

*Hicks v. Stanley,*
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ....................... 29, 31, 36, 37

*Hubbard v. Donahoe,*
2013 WL 3943495 (D.D.C. July 31, 2013) .............................................. 22

*In re Abrams & Abrams, P.A.*,
  605 F.3d 238 (4th Cir. 2010) ...................................................................... 37

*In re American Bank Note Holographics, Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ........................................................ 14

*In re Apple Computer, Inc. Deriv. Litig.*,
  2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) .............................................. 28

*In re Austrian and German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................... 11, 13, 17, 20

*In re Brown Co. Sec. Litig.*,
  355 F. Supp. 574 (S.D.N.Y. 1973) ............................................................. 33

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) .......................................... 41, 42

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-1825,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ............................................. 40

*In re Continental Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992), ..................................................................... 27

*In re Fab Universal Corp. Shareholder Derivative Litig.*,
  2015 WL 7299773 (S.D.N.Y. Nov. 17, 2015) ......................................... 11, 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ....................................37, 38, 39, 40

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................ 14

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................................................... 22

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ................................................................ 10

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................... 12, 13, 35

*In re Med. X-Ray*,
  1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ................................................ 21

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*
2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ............................................................ 41

*In re Michael Milken and Associates Sec. Lit.,*
150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................................ 21

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................... 39

*In re Nissan Radiator/Transmission Cooler Litig.,*
2013 WL 4080946 (S.D.N.Y. May 30, 2013) ....................................................... 39

*In re PaineWebber Ltd. Partnerships Litig.,*
171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................... 18

*In re Polaroid,*
2007 WL 2116398 (S.D.N.Y. July 19, 2007) .......................................... 25, 29, 42

*In re Rite Aid Corp. Sec. Litig.,*
396 F.3d 294 (3d Cir. 2005) ................................................................................. 40

*In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices and Products Liab. Litig.,*
2010 WL 3422722 (S.D.N.Y. Aug. 24, 2010) ...................................................... 41

*In re Sony SXRD Rear Projection Television Class Action Litig.,*
2008 WL 1956267 (S.D.N.Y. May 1, 2008) ......................................................... 26

*In re Telik, Inc. Sec. Litig.,*
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................... 25, 33, 39, 40

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,*
724 F. Supp. 160 (S.D.N.Y. 1989) ....................................................................... 39

*In re Veeco Instruments Inc. Sec. Litig.,*
2007 WL 4115808 ................................................................................... 25, 34, 41

*In re Vitamins Antitrust Litig.,*
2001 WL 34312839 (D.D.C. July 16, 2001) ......................................................... 22

*In re Warnaco Group, Inc. Sec. Litig.,*
2004 WL 1574690 (S.D.N.Y. July 13, 2004) ....................................................... 36

*In re "Agent Orange" Prod. Liab. Litig.,*
611 F. Supp. 1396 (E.D.N.Y. 1985) ..................................................................... 22

*Ingles v. Toro,*
   438 F. Supp. 2d 203 (S.D.N.Y. 2006) ............................................................... 12

*Ingram v. Coca-Cola Co.,*
   200 F.R.D. 685 (N.D. Ga. 2001) ....................................................................... 28

*Johnston v. Comerica Mortgage Corp.,*
   83 F.3d 241 (8th Cir. 1996) .............................................................................. 22

*Khait v. Whirlpool Corp.,*
   2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ..................................................... 36

*Lobatz v. U.S. W. Cellular of Cal., Inc.,*
   222 F.3d 1142 (9th Cir. 2000) .......................................................................... 28

*Lopez v. Youngblood,*
   2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ................................................... 22

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
   671 F. Supp. 819 (D. Mass. 1987) ..................................................................... 28

*Malchman v. Davis,*
   761 F.2d 893 (2d Cir. 1985) ............................................................................. 27

*Martens v. Smith Barney, Inc.,*
   181 F.R.D. 243 (S.D.N.Y. 1998) ....................................................................... 17

*Masters v. Wilhelmina Model Agency, Inc.,*
   473 F.3d 423 (2d Cir. 2007) ................................................................. 25, 29, 30

*McBean v. City of New York,*
   233 F.R.D. 377 (S.D.N.Y. 2006) ....................................................................... 26

*McKinnie v. JP Morgan Chase Bank, N.A.,*
   678 F. Supp. 2d 806 (E.D. Wis. 2009) ............................................................... 30

*Missouri v. Jenkins,*
   491 U.S. 274 (1989) ......................................................................................... 39

*Morris v. Affinity Health Plan, Inc.,*
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................... 16

*Newman v. Stein,*
   464 F.2d 689 (2d Cir. 1972) ................................................................. 16, 18, 21

*Odom v. Hazen Transp., Inc.,*
   275 F.R.D. 400 (W.D.N.Y. 2011) .................................................................... 18

*Perez v. Asurion Corp.,*
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) .......................................................... 15

*Plummer v. Chemical Bank,*
   668 F.2d 654 (2d Cir. 1982) ............................................................................ 17

*Poertner v. Gillette Co.,*
   618 Fed. Appx. 624 (11th Cir. 2015) ............................................................. 15

*Ressler v. Jacobson,*
   149 F.R.D. 651 (M.D. Fla. 1992) .................................................................... 40

*Spicer v. Pier Sixty LLC,*
   2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) ............................................... 39

*Steinberg v. Nationwide Mut. Ins. Co.,*
   612 F. Supp. 2d 219 (E.D.N.Y. 2009) ............................................................ 27

*Taft v. Ackermans,*
   2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ................................................... 31

*TBK Partners, Ltd. v. W. Union Corp.,*
   675 F.2d 456 (2d Cir. 1982) ............................................................................ 15

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.,*
   2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................................ 22

*Torres v. Gristede's Operating Corp.,*
   2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ................................................ 20

*Torres v. Gristede's Operating Corp.,*
   2013 WL 2257859 (2d Cir. May 22, 2013) ............................................... 22, 30

*Touhey v. United States,*
   2011 WL 3179036 (C.D. Cal. July 25, 2011) ................................................ 15

*Trustees v. Greenough,*
   105 U.S. 527 (1881) .......................................................................................... 24

*Velez v. Novartis Pharmaceuticals Corp.,*
   2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ............................................... 30

*Viafara v. MCIZ Corp.*,
  2014 WL 1777438 (S.D.N.Y. May 1, 2014) ........................................................... 42

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ............................................................... 11, 25, 29

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir. 1999) ........................................................................... 29

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ................................................................................ 10

*Williams v. First National Bank*,
  216 U.S. 582 (1910) .......................................................................................... 10

*Williams v. MGM-Pathe Communications Co.*,
  129 F.3d 1026 (9th Cir. 1997) ........................................................................... 29

*Willix v. Healthfirst, Inc.*,
  2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ......................................... 20, 26, 36

## Rules

Fed. R. Civ. P. 12(c) ......................................................................................... 5

Fed. R. Civ. P. 23 ...................................................................................... passim

## Other Authorities

4 Alba Conte & Herbert B. Newberg,
  Newberg on Class Actions § 14:6 (4th ed. 2002) ......................................... 30

Manual for Complex Litigation, Fourth, § 21.71 ........................................... 22

Plaintiffs Yang Chen, Lawrence Sasso, Audrey Bogdanski, Michael Kantor, and Erin Spillman ("Plaintiffs" or "Named Plaintiffs") submit this memorandum of law in support of their motion for final approval of the class action settlement as set forth in the Settlement Agreement, dated November 2, 2015 (the "Settlement" or "Settlement Agreement") (Dkt. No. 71-1) pursuant to Federal Rule of Civil Procedure 23(a), (b)(3) and (e), for attorneys' fees and expenses, and named plaintiff enhancement awards.

## I.    INTRODUCTION

This motion pertains to five class actions[1] (collectively, the "Actions") against Defendant HIKO ENERGY, LLC ("HIKO" or Defendant).  Plaintiffs allege that HIKO made misleading misrepresentations contrary to its obligations under applicable laws.  They allege that HIKO's rates were not, as it claimed in its consumer contracts, based on "market related factors," but instead were higher than prevailing market rates, and that HIKO's rates were not reflective of the market because its rates sometimes rose and remained steady when prevailing average market rates declined.  Defendant denies these allegations and contends that its rates were adequately disclosed and reasonably related to the relevant markets for electric and gas service.  Defendant also contends that it has strong defenses against class certification and meritorious summary judgment arguments including *res judicata*.

---

[1] The class actions are (1) *Chen v. HIKO Energy, LLC*, Civil Action No. 14-01771-VB, in the U.S. District Court for the Southern District of New York; (2) *Sasso v. HIKO Energy, LLC*, Civil Action No. 14- CV-2042-VB, in the U.S. District Court for the Southern District of New York; (3) *Bogdanski v. HIKO Energy, LLC*, Civil Action No. 14-cv-01948, originally in the U.S. District Court for the Middle District of Pennsylvania; (4) *Kantor v. HIKO Energy, LLC*, Civil Action No. 14-cv-05585-TJS in the U.S. District Court for the Eastern District of Pennsylvania; and (5) *Spillman v. Hiko Energy LLC*, Index No. 651798/2015, in the Supreme Court for the State of New York, County of New York.  *Chen, Sasso* and *Bogdanski* have been consolidated by this Court, while *Kantor* remains pending in the Eastern District of Pennsylvania and *Spillman* in New York State Supreme Court-New York County.

After hard-fought litigation, which included extensive motion practice and investigation, and after extensive arm's length settlement negotiations that took place over a three-month span (with the assistance of a highly regarded mediator), Plaintiffs and Defendant have agreed to a global settlement that will resolve all of the Actions.  This Court granted preliminary approval of the Settlement on January 6, 2016, certifying the class for settlement purposes and authorizing the dissemination of class notice.  *See* Dkt. No. 73.

Plaintiffs respectfully request that this Court now grant final approval.  First, the Settlement offers substantial benefits to Class members and avoids the delay, expense and risks inherent in litigating class claims through trial and appeal.  The Settlement's value is estimated at approximately $7,225,000.00 to $10,225,000.00 million depending on which payment option, cash or credit, claiming Class members select and including the request for attorneys' fees and expenses and the cost of settlement administration.[2]  Class Counsel estimated total damages to be approximately $45 million.  As such, the Settlement value represents 16% to 23% of the total potential class damage recovery, if Plaintiffs were to succeed in certifying a class (and subsequently defeating Defendant's decertification motion), survive summary judgment, win at a trial, and then overcome the inevitable appeals.  Second, the Settlement was the product of arm's length negotiations aided by an independent mediator and conducted by experienced counsel who obtained extensive formal and informal discovery in the actions and, as such, were well-positioned to evaluate the strengths and weaknesses of the claims and defenses asserted, the potential damages incurred by the Class, and the fairness of the Settlement.  Third, the positive response from the Class augers in favor of approving

---

[2]  At the January 6, 2016 preliminary approval hearing, counsel for HIKO represented that the estimated value of the Settlement was between $6 million and $9 million, depending on which payment option, cash or credit, claiming Class members select.  *See* Transcript of January 6, 2016 Preliminary Approval Hearing, attached as Exhibit 1 to the Declaration of Todd S. Garber ("Garber Dec."), at 8.  If the fee request of $975,000 and cost of settlement administration of $250,000.00 are added as permitted by Second Circuit precedent, the total value of the Settlement is between $7,225,000.00 and $10,225,000.00.

the Settlement.  Only 107 of the 185,593 Class members (or .057% of the Class) have opted out, and there has only been one objection to the Settlement.  The Settlement Administrator has also received over 6,500 calls from Class members as of April 7, 2016, and nobody expressed any reservations about the amounts indicated in the Settlement, including Class Counsel's anticipated fee request. Thus, Plaintiffs hereby apply for the entry of an order that will certify the proposed Class and finally approve the Settlement.

Class Counsel also moves for an award of attorneys' fees and expenses in the amount of $975,000.00.  That amount is between 9.54% and 13.49% of the total value of the Settlement, including the attorneys' fees and expenses requested and the cost of settlement administration.  The requested amount represents a negative lodestar of 0.8798, well below the range of awards commonly approved within this Circuit.  HIKO has agreed to pay an award the Court approves up to this requested amount, which is separate and apart from the benefit to be received by Class members and in no way diminishes their recovery.  Indeed, if the Court were to deny the requested award for fees and expenses, in whole or in part, none of the amount HIKO has agreed to pay Class Counsel would be paid to the Class.  Rather, HIKO's aggregate settlement costs would simply be reduced. Thus, barring Class Counsel from receiving the requested attorneys' fees and expenses would simply benefit HIKO, without any offsetting gain to the Class.  As the amount requested (i) has been agreed upon by the parties through arm's length negotiations; (ii) will not in any way diminish the recovery of the Class; (iii) falls well within the range of attorneys' fees and expenses awarded by courts within this Circuit using either the percentage of the fund or lodestar methodology; and (iv) was adequately disclosed in advance to the Class through various notices and not objected to, this Court should approve the requested attorneys' fees and expenses to compensate Class Counsel for the outstanding result achieved.

Class Counsel also requests that the Court approve the payment of Named Plaintiff Enhancement Awards in the amount of $4,000 each to compensate them for the time and effort spent in assisting in the prosecution of the actions on behalf of the Class.  HIKO has agreed not to contest the service award request.  Moreover, as with Class Counsel's fee request, the service award request was subject to arm's length negotiations between parties, is comparable to other service award payments in other class actions, and was adequately disclosed in advance to the Class.  HIKO has agreed to pay the requested service awards the Court approves up to this requested amount, which is separate and apart from the benefit to be received by Class members and in no way diminishes their recovery.

## II.      BACKGROUND OF THE LITIGATION

 Before bringing the instant action, Plaintiffs' counsel exhaustively investigated Plaintiffs' claims by communicating with Plaintiffs, reviewing their files and  independently obtaining copies of the relevant contractual terms and conditions, as well as samples of Defendant's marketing materials, researching what causes of action to assert against HIKO and developing a theory of the case and litigation strategy. Garber Dec. ¶ 3; Declaration of Matthew R. Mendelsohn ("Mendelsohn Dec.") ¶ 9; Declaration of Matthew D. Schelkopf ("Schelkopf Dec.") ¶ 5; Declaration of Michelle R. O'Brien ("O'Brien Dec.") Dec. ¶ 3; Declaration of Kenneth Grunfeld ("Grunfeld Dec.") ¶ 7; Declaration of Charles J. LaDuca ("LaDuca Dec.") ¶ 3; Declaration of Richard D. Greenfield ("Greenfield Dec.") ¶ 3; Declaration of Mark Levine ("Levine Dec.") ¶ 4.  They also identified the relevant energy markets and the rates available from local utilities and other independent energy suppliers or ESCOs.   Garber Dec. ¶ 3; Levine Dec. ¶ 4.

Plaintiff Yang Chen filed a class action complaint against HIKO on March 14, 2014, styled *Chen v. HIKO Energy*, LLC, Civil Action No. 14-01771-VB, in the U.S. District Court for the

Southern District of New York. On March 24, 2015, Lawrence Sasso filed a class action complaint against HIKO, styled *Sasso v. HIKO Energy, LLC*, Civil Action No. 14- CV-2042-VB.  On July 7, 2014, Plaintiffs Chen and Sasso filed a consolidated class action complaint ("the Consolidated Complaint"). The *Chen* and *Sasso* Actions were consolidated by the Court on August 8, 2014.

On August 7, 2014, HIKO moved to dismiss the Consolidated Complaint or strike class allegations.  On December 29, 2014, the Court granted in part, denied in part HIKO's motion to dismiss, and denied HIKO's motion to strike the class allegations from the Consolidated Complaint. On January 13, 2015, HIKO answered the Consolidated Complaint.

On March 6, 2015, HIKO moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  The motion was fully briefed by both parties and has since been denied as moot by the Court in light of the Settlement's preliminary approval.

On October 7, 2014, plaintiff Audrey Bogdanski filed a class action complaint styled *Bogdanski v. HIKO Energy, LLC*, Civil Action No. 14-cv-01948, in the U.S. District Court for the Middle District of Pennsylvania.  On February 12, 2015, HIKO moved to dismiss the *Bogdanski* action or strike class allegations.  On March 13, 2015, the *Bogdanski* action was transferred to this Court, where it bears the docket number 15-CV-02025 (VB).  On June 1, 2015, the *Bogdanski* action was consolidated with *Chen* and *Sasso* actions ("the Consolidated Action").  The Court has since denied as moot HIKO's motion to dismiss or strike class allegations in light of the Settlement's preliminary approval.

On September 29, 2014, plaintiff Michael Kantor filed a class action complaint styled *Kantor v. HIKO Energy, LLC*, Civil Action No. 14-cv-05585-TJS, in the U.S. District Court for the Eastern District of Pennsylvania.  On February 2, 2015, HIKO moved to dismiss or strike class allegations in

the *Kantor* action. The Court denied HIKO's motion on April 14, 2015.  Defendant HIKO answered the complaint on May 1, 2015.

In the *Spillman* action, the complaint was filed on May 21, 2015.  On August 4, 2015, Defendant filed  a "Motion To Dismiss Or, In The Alternative, To Strike The Request For Statutory Damages Or, In The Alternative, To Stay,"  which has been fully briefed  but has yet to be decided by the New York Supreme Court (Shirley Werner Kornreich, J.S.C.).

While litigating the Actions vigorously, the Parties met telephonically and in person to discuss a comprehensive settlement of the claims of the Named Plaintiffs and the putative class. Garber ¶ 11.  Plaintiffs' counsel also met internally to review the strategy for and status of settlement negotiations.  Garber Dec. ¶ 11; Grunfeld Dec. ¶ 7; LaDuca Dec. ¶ 3; Levine Dec. ¶ 4.

On August 4, 2015, the Parties participated in day-long mediation with Vivien B. Shelanski, Esq. of JAMS and were able to reach agreement on relief for the class.  Garber Dec. ¶ 13.  A "Memorandum of Understanding" was agreed to and executed by representatives of Plaintiffs and Defendant.  Garber Dec. ¶ 13.

The Parties recognize and acknowledge the benefits of settling these cases.  Plaintiffs believe that the claims asserted in this case have merit and that the evidence developed to date supports their claims.  Despite the strengths of their cases, Plaintiffs are mindful of the challenges to proof under, and possible defenses to, the claims in these matters. Plaintiffs further recognize and acknowledge the expense and length of time that proceedings necessary to prosecute this matter against HIKO through trial, post-trial proceedings, and appeals would take.  Plaintiffs' counsel have taken into account the uncertain outcome and risks of the litigation, including HIKO's ability to pay, as well as the difficulties and delays inherent in such litigation and the likelihood of protracted appeals.  They have, therefore, determined that the Settlement set forth in this Agreement is fair, reasonable and

adequate.  The Settlement confers substantial benefits upon, and is in the best interests of, the Plaintiffs and the Settlement Class.

HIKO maintains that it has a number of meritorious defenses to the claims asserted in these actions.  Nevertheless, HIKO recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending class actions, the costs of any appeals, and the disruption to its business operations arising out of class action litigation.  HIKO also recognizes the risk that a trial on class-wide claims might present.  Accordingly, HIKO believes that the Settlement set forth in the Agreement is likewise in its best interests.

As part of their investigation, and in preparation for their class certification motion and for a trial on the merits, Plaintiffs also engaged the services of Dr. Frank Felder, who is the Director of the Center for Energy, Economic & Environmental Policy at the Rutgers University Edward J. Bloustein School of Planning and Public Policy.  Garber Dec. ¶ 10.  Dr. Felder provided his expertise with respect to the manner in which HIKO determined its rates, and he assisted Plaintiffs in determining the extent to which HIKO's rates were in excess of other ESCOs and local utilities.  Garber Dec. ¶ 10.

Defendant served interrogatories and document demands on Plaintiffs, who responded to the discovery, providing information regarding their purchases of electricity from HIKO.  Garber Dec. ¶ 9; Mendelsohn Dec. ¶ 9; Schelkopf Dec. ¶ 5.  Plaintiffs also obtained Defendant's responses to their interrogatories and document demands.  Garber Dec. ¶ 9.  Plaintiffs and Defendant exchanged letters identifying alleged deficiencies in discovery responses and met and conferred on discovery issues. Garber Dec. ¶ 9; Mendelsohn Dec. ¶ 9; Schelkopf Dec. ¶ 5.  As a result of the extensive investigation, motion practice and discovery conducted in the Actions, both sides were able to enter into settlement negotiations with an informed view of the strengths and weaknesses of their

prospective cases, and with a basis for determining what form of monetary relief would be reasonable and appropriate in the settlement context.  Garber Dec. ¶ 12.

## III.    SUMMARY OF THE SETTLEMENT

The gravamen of Plaintiffs' Complaint is that HIKO represented that its rates reflected competitive prices in the market when those rates were often higher than average market rates. HIKO contends that its disclosures with regard to rates were accurate and not misleading, and also that its rates were commensurate with rates charged in the relevant markets.  Both parties have investigated the facts and analyzed the relevant legal issues.  While Plaintiffs and their counsel believe that the claims asserted have merit, Defendant disputes the factual allegations made by Plaintiffs, denies liability with respect to any of the claims alleged by Plaintiffs, and will contest class certification should the case proceed.  Plaintiffs have weighed the costs and benefits to be obtained under the Settlement Agreement as balanced against the costs, risks and delays associated with the continued prosecution of this complex and time-consuming litigation and the likely appeals of any rulings in favor of either the Settlement Class or the Defendant.  As a result, Plaintiffs believe that the Settlement Agreement provides substantial benefits to the Settlement Class, and is fair, reasonable, adequate and in the best interests of Plaintiffs and the Settlement Class.  Against this backdrop, and in the interest of avoiding protracted and costly litigation, the parties have agreed to a proposed settlement as described below.

Under the Settlement Agreement, Defendant shall pay Class Members who timely submit completed claim forms as follows:[3]

---

[3] Dkt. No. 71-1 at 13-14.

A.    Current Customers[4] shall have the option of receiving either:

    1.    A credit on the Current Customer's future HIKO energy bills, of $6.00 per Customer Month Enrolled to be credited to the customer over the lesser of (i) a number of months equaling the Customer Months Enrolled or (ii) nine months (the "Credit Option") subject to the Credit Option Cap;[5] or

    2.    A check payable to the Current Customer, in the amount of $3.00 per Customer Month Enrolled ("the Cash Option") subject to the Cash Option Cap.[6]

B.    Former Customers[7] shall have the option of receiving either:

    1.    The Cash Option . . . subject to the Cash Option Cap; or

    2.    A credit of $75 on the Former Customer's next HIKO energy bill, should the Former Customer agree to purchase energy from HIKO for at least three months ("the Sign-Up Bonus Option").

Defendant shall also pay plaintiffs' attorney fees and costs in an amount to be approved by the Court of up to $975,000, as well as Named Plaintiff Enhancement Awards in an amount to be approved by the Court of up to $4,000 each.[8]  Defendant shall also pay the cost of notice to the class and administration of the settlement up to $250,000.[9]

---

[4] *Id.* at 5-6.  "Current Customer" means any Class Member who:  (a) was a customer of HIKO as of December 31, 2014; and (b) is a customer of HIKO on both (i) the Preliminary Approval Date and (ii) the date on which the Final Approval Order is entered.  Any Class Member who is not a Current Customer is a "Former Customer," as defined below.

[5] *Id.* at 5.  "Credit Option Cap" refers to a $175.00 maximum credit which will be credited to any Current Customer regardless of the number of Customer Months Enrolled or the number of meters associated with the customer.

[6] *Id.* at 4.  "Cash Option Cap" refers to a $60.00 maximum amount payable to any Current Customer or Former Customer regardless of the number of Customer Months Enrolled or the number of meters associated with the customer.

[7] *Id.* at 7.  "Former Customer" means any Class Member who is **not** a customer of HIKO on both (i) the Preliminary Approval Date and (ii) the date the Final Approval Order is entered, but who **was** a HIKO customer prior to or as of December 31, 2014.

[8] *Id.* at 15.

[9] *Id.*

In return for making these settlement benefits available to all Settlement Class members, the Settlement Class members' claims against Defendant will be dismissed with prejudice and all Settlement Class members (other than those who opt-out of the Settlement Class) will release and be permanently barred from pursuing any claims in accordance with the provisions of the Settlement Agreement.[10]

## IV.    STANDARD FOR APPROVAL OF A CLASS ACTION SETTLEMENT

Strong judicial policy favors the settlement of class actions.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.") (citing 3 Newberg, Class Actions § 5570c, at 479–80 (1977); *Williams v. First National Bank*, 216 U.S. 582, 595 (1910)).  "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  There is a strong public interest in quieting any litigation; this is particularly true in class actions."  *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations omitted).

Courts assess proposed class action settlements to determine whether they are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To do so, courts must determine whether both the negotiating process leading to a settlement and the settlement itself are fair, adequate and reasonable.  *See D'Amato v. Deutsche Bank*, 235 F.3d 78, 85 (2d Cir. 2001).  Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the negotiation enjoys a "presumption of fairness."

---

[10] *Id*. at 16.

*In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000); *see also Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

The Second Circuit identified nine factors in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462–63 (2d Cir. 1974), that district courts should consider in evaluating a proposed class action settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Each of these factors militates in granting final approval of the Settlement.

## V.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.     The Settlement Is Procedurally Fair

This Settlement, reached as a result of arm's length negotiation after protracted, hard-fought litigation and mediation, meets the standard for procedural fairness.  In determining whether a settlement is procedurally fair, courts evaluate the "negotiating process, to ensure that the settlement resulted from arm's length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests."  *D'Amato*, 236 F.3d at 85.

Here, the standards of procedural fairness are met.  "The parties are represented by experienced counsel, supporting a conclusion that the settlement negotiations were based on informed judgments as to the merits of the claims and defenses."  *In re Fab Universal Corp. Shareholder Derivative Litig.*, No. 14-687, 2015 WL 7299773, at *2 (S.D.N.Y. Nov. 17, 2015) (finally approving settlement).  In particular, Plaintiffs' counsel were well positioned to evaluate the

strengths and weaknesses of Plaintiffs' claims owing to the extensive formal and informal discovery had in the Actions and their extensive experience and knowledge in the area of complex and class action litigation.  *See* Garber Dec. ¶¶ 3, 9, 10 and 12, and Exhibit 1; Mendelsohn Dec. ¶¶ 5-6 and Exhibit A; Grunfeld Dec. ¶¶ 19 and 21, and Exhibit 2; Greenfield Dec. ¶ 6 and Exhibit A; LaDuca Dec. ¶ 6; Levine Dec., Exhibit 3.  Moreover, an independent and experienced mediator from JAMS, Vivien B. Shelanski, conducted neutral settlement negotiations.  *See Hayes v. Harmony Gold Min. Co. Ltd.*, 509 Fed. Appx. 21, 23 (2d Cir. 2013) (unpublished) (finally approving class settlement over objection of class representative because "the proposed settlement, on terms recommended by an independent and experienced mediator, was procedurally and substantively fair"); *In re Fab Universal Corp. Shareholder Derivative Litig.*, 2015 WL 7299773, at *2 ("The Proposed Settlement was the product of extensive formal mediation aided by a neutral JAMS mediator, hallmarks of a non-collusive, arm's-length settlement process.").  And "[t]he Settlement was not conditioned on the approval of Counsel's fee award request, further evidencing arm's-length negotiations." *Id.* Therefore, this Court should find that the Settlement is procedurally fair.

### B.    The Settlement Is Substantively Fair

The Second Circuit's *Grinell* factors guide this Court's decision as to whether it should approve the Settlement.  "In finding that a settlement is fair, not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) (internal quotation and citations omitted).  "The weight given to any particular factor will vary based on the facts and circumstances of the case." *Ingles v. Toro*, 438 F. Supp. 2d 203, 211 (S.D.N.Y. 2006) (citing 7B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil § 1797.1, at 77 (3d ed. 2005)).

### 1. The Actions Are Complex And Will Be Expensive And Lengthy

The Settlement Agreement provides substantial monetary benefits to the Settlement Class while avoiding the significant expenses and delays attendant to discovery and motion practice related to summary judgment and class certification. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174; *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005) (same). The Settlement Class includes all persons who were customers of HIKO during the Class Period (any time up to and including the Preliminary Approval Date, January 6, 2016) provided they were HIKO customers prior to or as of December 31, 2014. Having to engage in motion practice with respect to the consumer protection laws of seven states would be extremely time consuming and expensive. Moreover, as discovery is ongoing, completion of discovery alone, and the subsequent related expert reports and potential discovery disputes, and motion for class certification will result in the expenditure of substantial time and expense by the parties.

Moreover, continued litigation would necessitate numerous depositions of Plaintiffs and Defendant's personnel, as well as expert witnesses. Indeed, absent an approved settlement, the parties in all of the Actions will be forced to continue litigation, which will burden the three different courts hearing these cases. The resulting fact-intensive trials will also result in significant expenses to all parties. Any judgment will likely be appealed, extending the costs and duration of the litigation. The Settlement Agreement, on the other hand, will result in prompt and equitable payments to the Settlement Class and important injunctive relief that protect current class members and future consumers of Defendant's products. Thus, this factor weighs in favor of approving the Settlement. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 138-39

("[E]ven if the Class were to win a judgment at trial, the additional delay of trial, post-trial motions and appeals could deny the Class any actual recovery for years, further reducing its value.").

> ## 2.     The Reaction Of The Class Was Overwhelmingly Positive

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citing *In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (citation omitted)).

Here, Class member response to the Settlement was overwhelmingly positive.

<u>First</u>, only 107 Class members or .057% of the Class have opted out of the Settlement, and only one Class member or .00054% of the Class has objected.  *See* Declaration of Jason M. Stinehart, Program Manager for Rust Consulting, Inc. ("Rust Consulting Dec.") ¶ 8, and Dkt. No. 78.  The deadline to object or request exclusion was April 4, 2016.  Moreover, the Settlement Administrator has received over 6,500 calls as of April 7, 2016 from Class members with no one expressing any reservations about the Settlement.  Rust Consulting Dec. ¶ 7.  That there were a *de minimus* number of opt-outs and barely any objections is especially noteworthy, as "the notice and approval process generally solicits negative feedback regarding a settlement, because it is designed to solicit opt outs and objections by advising class members of the procedures and deadlines for filing such responses with the court . . . in litigation involving a large class, such as that here, it would be extremely unusual not to encounter objections."  *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012).  And courts routinely find that the reaction of the class is positive and weigh this factor in favor of approval even when there are more objections and opt-outs.  *See, e.g., Charron*, 874 F. Supp. 2d at 196 (118 objectors from a class of 22,000); *In re Global Crossing Sec. & ERISA*

*Litig.*, 225 F.R.D. 436, 457 (S.D.N.Y. 2004) (noting that there were 12 objectors and 9 opt-outs from a class of a million and holding that "[t]hese extremely low numbers of objectors and opt-outs strongly support settlement approval.").[11]

      Second, "the prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent." *Ferrington v. McAfee, Inc.*, No. 10-1455, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012). Here, as of April 14, 2016, 5,824 or 3.14% of the Class have submitted claims, with more claims expected as the May 5, 2016 deadline to submit claims approaches. Garber Dec. ¶ 15. Courts have approved claims-made class settlements where the claims rate was lower. *See, e.g.*, *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 625-26 (11th Cir. 2015) (unpublished) (approving 7.26 million-member settlement class when just 55,346 — less than 1% — filed claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (approving 10.3 million-member settlement class when less than 119,000 — approximately 1.1% — filed claims); *Touhey v. United States*, No. 08–1418, 2011 WL 3179036, at *7–8 (C.D. Cal. July 25, 2011) (finding a 2% response rate acceptable–38 responses out of 1,875 notices mailed—where there were no objections and the overall recovery was fair and reasonable); *Arthur v. SLM Corp.*, No. 10–198 (W.D. Wash. Aug. 8, 2012), Dkt. No. 249 at 2–3 (claims rate of approximately 2%). Although courts look to claims rate to gauge class reaction to a proposed settlement, "[t]he question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided." *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749, 2014 WL 5419507, at *5 (S.D. Fla. Oct. 24, 2014).

---

[11] In fact, courts in this District have approved settlements even when a majority of the class objected. *See, e.g.*, *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325 (2d Cir. 1990) (approving settlement where "a majority" of class objected); *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982) (between 54 and 58 percent of class objected).

The lone objector to the Settlement, Mark Littman, raises only two issues with the Settlement, both of which lack merit. First, Mr. Littman notes that "[t]he amount being offered is a mere 26% of [his] actual damages [of $228.93] and, additionally, [he] would not be compensated for any interest . . ." Dkt. No. 78 at 2. But 26% of actual damages is a great recovery. Courts consistently approve settlements for much smaller percentages. *See, e.g., Newman,* 464 F.2d at 693 (approving settlement for $5 million, reflecting 14% of the potential liability of $35 million); *Cagan v. Anchor Sav. Bank FSB,* No. 88-3024, 1990 WL 73423, at *12 (E.D.N.Y. May 22, 1990) (approving settlement for $2.3 million, reflecting 1.9% of maximum potential recovery of approximately $121 million); *Chambery v. Tuxedo Junction, Inc.*, No. 12-6539, 2014 WL 3725157, at *7 (W.D.N.Y. July 25, 2014) (approving settlement for $200,000, reflecting 6.67% of potential recovery of $3 million, especially given Defendants' financial position and risks of litigation); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (approving settlement for $2.5 million over objection that best possible recovery was $125 million – reflecting a recovery of 2%). With respect to attorneys' fees and expenses, Mr. Littman notes that the requested amount of $975,000.00 "would amount to an award to counsel of $39 per person where [Class members] are only getting $60 maximum (and often less)." Dkt. No. 78 at 2. Respectfully, Mr. Littman's objection is misguided. First, as discussed in detail *infra*, the fee request amounts to a negative multiplier of 0.8798 and only 9.54% to 13.49% of the value of the settlement, amounts that fall well below the ranges typically applied by courts in this Circuit. Second, the fee request does not impose a financial burden on any class member so tying Class Counsel's fees to each Class member makes little sense. Third, the $60 figure used by Mr. Littman does not account for the Sign-Up Bonus Option and Credit Option which amount to between up to $75 and $175 respectively. Finally, Mr. Littman's math is erroneous because he limits his objection to the New York Class members. When

viewed in the context of the entire Class of 185,593 members, the fee and expense award translates to $5.25 per person if borne by the Class. However, it is not borne by the Class but by HIKO which agreed to directly and separately pay attorneys' fees and expenses up to $975,000.00.

The small number of opt-outs and objections and that the lone objection in turn supports the Settlement or lacks merit, coupled with a claims rate typical of consumer class actions, weighs heavily in favor of the Settlement.

### 3. The Current Stage Of The Instant Litigation And The Extensive Discovery That Has Occurred Favors Final Approval

The Actions have been pending for years.[12] The legal issues in this case have been thoroughly vetted through Defendant's aggressive motions to dismiss in the instant litigation and in the other Actions as well as Defendant's motion for judgment on the pleading. Moreover, Plaintiffs' and Defendant engaged in discovery as well as arm's-length negotiations through an experienced mediator. In the mediation, the parties exchanged briefs and research. Plaintiffs' counsel conducted a thorough investigation of Plaintiffs' claims. Defendant's counsel has done so as well; each side has a thorough understanding of the case. The parties are not required to complete discovery for the Court to approve the settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 ("'To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery . . . it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.' Additionally, 'the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit.'") (citing *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982) and quoting *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243,

---

[12] *Chen* and *Sasso* were filed in March 2014, and *Kantor* and *Bodganski* in September and October 2014, respectively. *Spillman* was filed in May 2015.

263 (S.D.N.Y. 1998)).  Plaintiffs' counsel are well positioned to evaluate the merits of the

Actions.  Given the extent of motion practice and discovery that preceded and informed the

settlement negotiations, final approval of the Settlement is warranted.

4.     **Plaintiffs Face Substantial Hurdles In Establishing Liability**

The Settlement Agreement should be approved because Plaintiffs face substantial hurdles

in establishing liability.  Indeed, "[l]itigation inherently involves risks."  *In re PaineWebber Ltd.*

*Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (approving settlement); *see also Odom*

*v. Hazen Transp., Inc.*, 275 F.R.D. 400, 412 (W.D.N.Y. 2011) (approving settlement and

recognizing "the concomitant risks and costs necessarily inherent in taking any litigation to

completion.") (citing *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).

First, Defendant argues that its disclosures with regard to its rates, particularly those

contained in the customer agreements that were provided to class members, adequately disclose the

variable nature of its rates.  Second, Defendant argues that based on settlements that it has entered

into with various State Attorneys General, many if not all of Plaintiffs' claims are moot.  Third,

Defendant argues that its customers who have been enrolled with HIKO for considerable time should

not recover, because they have voluntarily paid the rates in question, of which they must be aware.

If Defendant can prove these claims, establishing liability will be quite difficult.  These are but a few

of the hurdles and difficulties that Plaintiffs may face in establishing liability against Defendant.

Plaintiffs' counsel is confident in its ability to prove Plaintiffs' case.  Nonetheless, the

Settlement Agreement avoids the risks inherent in further litigation, and therefore this factor weighs

in favor of approval of the Settlement.

5.     **Plaintiffs Face Substantial Hurdles In Proving Damages**

In order to prove damages, Plaintiffs must prove that Defendant's rates are not

competitive or commensurate with those otherwise available in the relevant markets; that
Defendant's marketing materials represented falsely that they would be, and that the disclosures
made by Defendant in connection with its marketing and contracts were insufficient.  This is an
expensive and challenging task.  First, while Plaintiffs are confident that their expert can collect
and collate pricing data in such a way that class and individual damages can be determined, that
task is immense.  Not only are there seven states involved, but rates vary within states based on
the local utility, and rates vary over time.  Not only must Plaintiffs' expert collect and collate
data from Defendant with regard to its rates, but he must also collect data regarding the historical
rates charged by local utilities and other ESCOs to identify the market rate.  Thus, there are
substantial obstacles Plaintiffs must overcome to prove damages in this case, a factor favoring
approval of the Settlement Agreement.

### 6.     Maintaining The Class Action Through Trial May Be Challenging

Plaintiffs are confident in their ability to maintain this action as a class through trial.
Nonetheless, they recognize that there are substantial hurdles in being able to do so.  First,
Defendant used a variety of advertisements and solicitations to enroll its customers.  Defendant
will no doubt argue that differences between the advertisements precludes certification of a class
and similarly dispute the extent to which those advertisements raise common questions of law
and fact that predominate over individual issues, making the proposed settlement a fair and
adequate alternative to continued litigation.  Second, each class member may have been damaged
in differing amounts, depending on the amount of energy used, the supplier from which that class
member switched, and their geographic location.  Thus, demonstrating that damages can be
handled on a class-wide basis will be challenging (although Plaintiffs are confident that their
expert can develop a data set demonstrating each class members' damages).  Plaintiffs would

have to deal with these issues if and when they move to certify a class.

Moreover, even assuming Plaintiffs move for and obtain class certification, Defendant can always move to decertify the class, highlighting the inherent risks and expense of maintaining a class through trial.  *See Torres v. Gristede's Operating Corp.*, No. 04-3316, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) *aff'd,* 519 F. App'x 1 (2d Cir. 2013) ("The risk of maintaining class status throughout trial also weighs in favor of final approval.  Defendant would likely move to decertify, requiring another round of briefing.  Defendant may also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f).  Settlement eliminates the risk, expense, and delay inherent in this process."); *Willix v. Healthfirst, Inc.*, No. 07-1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (same).  The proposed Settlement avoids the risks inherent in further litigation, and therefore, this factor weighs in favor of preliminary approval.

### 7.  The Defendant May Not Be Able To Withstand A Substantially Greater Judgment

The ability of Defendant to withstand a substantially greater judgment is by no means assured.  While Plaintiffs have no concern that HIKO has the ability to pay all claims made in the context of this Settlement Agreement, it is almost certain that HIKO would not have been able to bear the enormously large statutory and compensatory damages award that could be assessed were the case to proceed through trial.  While a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair," here the fact that HIKO could not have withstood a judgment in this case augers in favor of approval.  *See In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9.

**8.      The Settlement Amounts Are Reasonable In Light Of The Best
Possible Recovery And In Light Of All The Attendant Risks Of Litigation**

The adequacy of a settlement amount offered should be judged "in light of the strengths and weaknesses of the plaintiff[s'] case." *In re Med. X-Ray*, No. 93-5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998).  That the settlement amount is less than the maximum potential recovery is not a barrier to approval.  *See Grinnell Corp.*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").  Indeed, judging whether a settlement is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken and Associates Sec. Lit.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). Instead, "there is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman,* 464 F.2d at 693.

Here, there is a broad range of potential recovery if the case were to be litigated to judgment by trial.  On the one hand, Plaintiffs could prevail on their claims and recover the difference in what Defendant charged for electricity and natural gas and what local utilities and ESCOs charged.  In addition, New York consumers can receive a statutory penalty of $500.00 under G.B.L. § 349-d.  Accordingly, statutory damages owed the Settlement Class could be substantial.  On the other hand, Defendant could prevail on its legal arguments to defeat liability entirely, resulting in no recovery for class members.  Given this broad range of possible damages, a settlement worth between $7,225,000.00 and $10,225,000.00, *i.e.*, $6 million and $9 million if all claimants picked either the Cash Option or the Credit Option, plus the fee request and cost of settlement administration, falls well within the range that courts have traditionally

found to be fair and adequate under the law.[13]

Moreover, the fact that the Settlement Agreement provides for a prompt payment to claimants favors approval of the settlement. *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road.  Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available

---

[13] In a "constructive fund" case such as this, it is appropriate to add the amount made available to the class to the fees requested to determine the value of the total fund for purposes of determining the percentage of the fund the fee request represents. *See, e.g.*, *Torres v. Gristede's Operating Corp.*, No. 12-3336, 2013 WL 2257859, at *3 (2d Cir. May 22, 2013); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); Manual for Complex Litigation, Fourth, § 21.71 p. 525 ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class…"); *Hubbard v. Donahoe*, No. 03-1062, 2013 WL 3943495, at *4, 8 (D.D.C. July 31, 2013) (collecting cases) (awarding $910,000 of the $4,550,000 benefit to the class and holding that "the Court considers the separate funds for class recovery and attorneys' fees collectively as a 'constructive common fund,' valued at $4,550,000."); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1072 (S.D. Tex. 2012) (collecting cases and awarding attorneys' fees equal to 20% of the settlement value and holding that "[h]aving two funds -- one for the claimants, one for the attorneys -- is a well-recognized variant of a common-fund arrangement."); *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 121 (D.D.C. 2007) (awarding 22.5% of value of recovery and holding that "the Court believes that the settlement in this case represents a constructive common fund" despite the fact that "the settlement has separate funds for class recovery and attorneys' fees."); *Lopez v. Youngblood*, No. 07-0474, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011) (awarding 28.5% of the percentage of the recovery where attorneys' fees were paid separate and apart from benefit to the class and citing with approval *Johnston* and *In re Vitamins Antitrust Litig.*, No. 99-197, 2001 WL 34312839, at *4 (D.D.C. July 16, 2001)).

promptly.") (modified on other grounds)).  Therefore, these factors militate in favor of approving the Settlement.

## VI.    NOTICE WAS PROVIDED IN THE BEST PRACTICABLE MANNER

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The Rule also requires that any such notice clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

Here, the Court approved "the form and content of the proposed Short Form Notice . . . and Long Form Notice . . . (collectively, 'Class Notice') and approve[d] the Parties' proposal to distribute the Short Form Notice by U.S. Mail and the Long Form Notice via the Internet . . ." Dkt. No. 73 at 2.  The Court further found that "the Parties' proposal regarding class notice to potential class members constitutes the best notice practicable under the circumstances, and complies fully with the notice requirements of due process and Fed. R. Civ. P. 23." *Id.* at 2-3.

Pursuant to the schedule approved by the Court for the dissemination of the Class Notice, HIKO, on November 10, 2015,  provided the Settlement Administrator with the names and mailing addresses (as reflected in its records) of potential class members; the Settlement Administrator mailed the Short Form Notice to Class members on February 3, 2016 after confirming and updating the mailing addresses using the National Change of Address database, and re-mailed notices returned undeliverable after conducting  a one-time skip trace; and, on February 3, 2016, the Settlement

Administrator established a website containing all the information required by this Court and a dedicated toll-free phone number for inquiries from Class members. Rust Consulting Dec. ¶¶ 4-7.

As the Class Notice was disseminated in strict compliance with this Court's directives, this Court should grant final approval of the Settlement.

## VII.  THE COURT SHOULD CERTIFY THE CLASS

Plaintiffs moved to preliminarily certify the Class for settlement purposes, and the Court granted the motion on January 6, 2016. *See* Dkt. No. 73. For the reasons stated in Plaintiffs' Memorandum of Law in Support of Uncontested Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 70 at 17-23), this Court should certify the Class.

## VIII.  THE COURT SHOULD APPROVE THE REQUESTED AWARD OF ATTORNEYS' FEES TO BE PAID BY HIKO TO CLASS COUNSEL

HIKO has agreed to pay Class Counsel up to $975,000.00 in attorneys' fees, costs and other litigation expenses, which amount is separate and apart from the benefit to be received by Class members. Any reduction in the amount requested by Class Counsel will not increase the Class members' recovery but will decrease the aggregate amounts to be paid by HIKO in the Settlement. As set forth more fully below, Class Counsel's proposed $975,000.00 award for fees and expenses merits approval.

### A.    Class Counsel Is Entitled To Compensation

For more than a century, the Supreme Court has held that "where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury," the attorney is entitled to a reasonable fee. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing *Trustees v. Greenough*, 105 U.S. 527 (1881); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)). Awarding Class Counsel fees "serves the salutary purpose of encouraging counsel to pursue meritorious claims on behalf of a class of individuals who could

not afford to litigate their individual claims." *Steiner v. Williams*, No. 99-101186, 2001 WL 604035, at *1 (S.D.N.Y. May 31, 2001).  Indeed, the contingency fee awarded to class counsel should be greater than the fees that the same attorneys would charge their clients in non-contingency cases.  "No one expects a lawyer whose compensation is contingent on success of his services to charge, when successful, as little as he would charge a client who in advance has agreed to pay for his services, regardless of success." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-1695, 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007) (same).[14]

District courts in the Second Circuit may award attorneys' fees to prevailing class counsel under either a "percentage of the fund" or "lodestar" method to compute fees in common fund cases.  *See Wal-Mart*, 396 F.3d at 121; *In re Polaroid*, No. 03-8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007).  However, "[t]he trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 121; *see also Polaroid*, 2007 WL 2116398, at *2.  In addition, the award must be based on "the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007).

Under either method, Class Counsel's proposed $975,000.00 award for fees and expenses, representing between 9.54% and 13.49% of the total value of Settlement under the Credit Option and Cash Option, respectively, merits approval and falls well within the range of class counsel fees approved in comparable cases using either method.  *See, e.g., Beckman v. KeyBank, N.A.*, No. 12-7836, 2013 WL 1803736, at *12 (S.D.N.Y. Apr. 29, 2013) (awarding

---

[14] *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008) (citing *Maley*, 186 F.Supp.2d at 369) ("Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.")).

33% of $4.9 million settlement holding "[t]his case does not require a 'sliding scale' approach to prevent a windfall because the requested amount is consistent with the norms of class litigation in this circuit."); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-8472, 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013) (awarding "$2,310,000 which is 33% of the settlement fund"); *Clark v. Ecolab Inc.*, No. 07-8623, 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (awarding fees of 33% of $6 million settlement fund); *Willix*, 2011 WL 754862, at *6 (awarding "$2,558,333 in attorneys' fees or one third (33 1/3%) of the Fund").

### B.    HIKO Will Pay Class Counsel's Fees At No Cost To The Class

Before applying either method, it is important to recognize that HIKO has agreed to pay Class Counsel's fees from its own resources.  As a result, the fee award will have no impact whatsoever on the benefit afforded to the Class members.  When the settling defendant agrees to pay class counsel's fees from its corporate treasury, independent of the benefit obtained for the class, "the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members."  *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010).  Here, HIKO has agreed to pay Class Counsel's fees and expenses in an amount not to exceed $975,000.00.  As a result, the fee award will not diminish the benefits provided to the Class members.  "Thus regardless of the size of the fee award, class members . . . will receive the same benefit; the fee award does not reduce the recovery to the class.  Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished."  *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-5173,

2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008).  Courts have approved the payment of class

counsel fee awards by the defendant, rather than the Class members.[15]

Moreover, a fee negotiated between the parties is preferable because, as a market-set

price resulting from opposing interests, it is the most accurate method of determining an

appropriate fee.  Defendant had an interest in minimizing the fee, Class Counsel had an interest

in maximizing it, and the negotiations were informed by the parties' knowledge of the work done

and result achieved and their views on what the court might award if the matter were litigated.[16]

In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the Court of Appeals for the Second Circuit

concluded that courts should be hesitant to interfere in fee arrangements between the plaintiffs

and the defendants when the defendants have agreed not to oppose the payment of fees up to a

certain amount:

> [W]here ... the amount of the fees is important to the party paying them, as well as
> to the attorney recipient, it seems to the author of this opinion that an agreement
> "not to oppose" an application for fees up to a point is essential to completion of
> the settlement, because the defendants want to know their total maximum
> exposure and the plaintiffs do not want to be sandbagged.  It is difficult to see
> how this could be left entirely to the court for determination after the settlement.

*Malchman*, 761 F.2d at 905 n.5.  Similarly, in *In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th

Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating

fee requests, stating "it is not the function of judges in fee litigation to determine the equivalent

---

[15] *See e.g., Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009)
(noting "with approval that the fee award will not be drawn from the common fund but will be
paid directly by [defendant].  In this regard, the fee award, however substantial, will have no
effect on the monetary relief afforded to class members."); *Cavalieri v. General Elec. Co.*, No.
06-315, 2009 WL 2426001, at *3 (N.D.N.Y. Aug. 6, 2009) (same).

[16] The Federal Rules of Civil Procedure expressly authorize the Court to "award reasonable
attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."
Fed. R. Civ. P. 23(h); Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("The agreement by a
settling party not to oppose a fee application up to a certain amount, for example, is worthy of
consideration . . .").

of the medieval just price," but rather "to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Id.* at 568.[17]

In fact, the Second Circuit rejected an objector's argument relating to a negotiated fee provision holding "that such provisions, without more, do not provide grounds for vacating the fee." *Blessing v. Sirius XM Radio Inc.*, No. 11-3696, 2012 WL 6684572, at *2 (2d Cir. 2012). The Second Circuit found support for its position in the fact that the district court independently analyzed the fee request (an analysis that Class Counsel welcomes and always understood would occur in this case). *See id.* (endorsing the Second Circuit's decision in *Malchman* on "clear sailing" provisions).

As such, Class Counsel respectfully submits that the fact that the fee was negotiated at arm's length and will in no way reduce the funds available for the Class, supports the approval of the fee request.

C.    **The Second Circuit Has Approved Both The Percentage Method And The Lodestar Method, But The Percentage Method Is Preferred**

Courts have developed two methods for awarding attorneys' fees in successful

---

[17] *See e.g., Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000) (affirming award of fees and expenses, where defendant had agreed not to oppose request for fees and expenses up to a negotiated ceiling and to be paid separately from class settlement benefits); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (upholding the district court's award of attorneys' fees where the court had approved attorneys' fees and costs of $5.2 million that were negotiated after the final settlement was achieved); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves."). *Cf., Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (giving "substantial weight to a negotiated fee amount"); *In re Apple Computer, Inc. Deriv. Litig.*, No. 06-4128, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a properly bargained-for agreement"); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 861 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.") (citation omitted).

class actions: the percentage method and the lodestar/multiplier method. *Maley*, 186 F. Supp. 2d at 369. A court applying the percentage method "sets some percentage of the recovery as a fee." *Goldberger*, 209 F.3d at 47 (citation omitted). In doing so, the court considers six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50 (internal citations and quotation marks omitted). *Accord Polaroid*, 2007 WL 2116398, at *2. Courts consider the same factors in applying the lodestar method. *Id.*[18] Here, the fee requested is plainly justified under either method.

### D.    The Requested Fee Is Justified Under The Percentage Method

#### 1.    The Full Value Of The Settlement Fund Available Is Considered

Attorneys' fees awarded as a percentage of a fund must take into consideration the entirety of the fund, not only that portion received directly by the class members. *See Masters*, 473 F.3d at 437. In *Masters*, the Second Circuit held that: "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not. We side with the circuits that take this approach." *Id.*[19] The

---

[18] The Second Circuit has held that a district court may use either method. *Id.* However, the Second Circuit disfavors the lodestar method because it "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart*, 396 F.3d at 122 (internal citation omitted). The percentage method is considered preferable "because it reduces the incentive for counsel to drag the case out to increase the number of hours billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition." *Hicks v. Stanley*, No. 01-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (citation omitted).

[19] Citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999) (approving district court's award of 33 1/3% based "on a percentage of the total fund rather than the actual payments made to class members."); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d

Court continued, "[o]ur own cases refer to 'percentage of the fund,' and 'percentage of the recovery.'  We take these references to be to the whole of the Fund."  *Id.* (emphasis in original, citations omitted).  *See also Torres*, 2013 WL 2257859, at *3 (calculating fees "on the basis of the total funds made available."); *Aros v. United Rentals, Inc.*, No. 10-73, 2012 WL 3060470 (D. Conn. July 26, 2012) ("In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts, have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants.").[20]

Here, the total value of the Settlement is between $7,225,000.00 and $10,225,000.00, which includes the amount made available to the Class if all claimants opt for either the Cash Option or the Credit Option, the attorneys' fees and expenses requested and the cost of settlement administration.  As such, Class Counsel's reasonable fee request of $975,000.00 represents 9.54% and 13.49%, respectively, of the total value of the Settlement.

---

1026 (9th Cir. 1997) (per curiam) (reversing the district court award of 33% of the claimed fund and instead awarded attorneys' fees of $4.5 million or 33% of the total funds that were available to the class even though the actual payout only totaled approximately $10,000.).

[20] *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) (confirming the permissibility of using the entire fund as the appropriate benchmark); *Velez v. Novartis Pharmaceuticals Corp.*, No. 04-09194, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) (quoting *Masters*, 473 F.3d at 437) ("[T]his Circuit has ruled that '[a]n allocation of fees by percentage should therefore be awarded on the basis of total funds made available whether claimed or not.'"); *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 443 (S.D.N.Y. 2004) (noting that attorneys' fees equivalent to one-third of common fund of $18.4 million was approved notwithstanding that only $5.6 million of the $18.4 was claimed by class members with the remaining $11.8 million unclaimed and reverting to the defendants); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) (awarding $625,000 of $2.1 million fund amount despite only $500,000 in claims); 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:6, at 570 (4th ed. 2002) (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed).

### 2.     The Fee Award Is Supported By The *Goldberger* Factors

The attorneys' fees and expenses that Class Counsel is seeking and which HIKO has

agreed to pay separate and apart from the Class recovery is at the low end of the spectrum of fee

awards repeatedly approved by the Courts of this Circuit, with many cases awarding close to

33% of the settlement value.  *See Taft v. Ackermans*, No. 02-7951, 2007 WL 414493, at *10

(S.D.N.Y. Jan. 31, 2007) ("Thirty percent of a larger settlement fund could constitute a windfall;

however, a settlement fund of this size [$15.17 million] does not create such an issue."); *Hicks*,

2005 WL 2757792, at *9 ("A settlement amount of $10 million does not raise the windfall issue

in the same way as would a $100 million settlement, and a 30% fee does not produce such a

windfall.").  Moreover, the requested fee is eminently reasonable in light of the quality of the

representation, the risk incurred by Class Counsel, and the other *Goldberger* factors.

### a.     The Time And Labor Expended By Counsel

The time and labor expended by Class Counsel are set forth in detail in the accompanying

Declaration.  In general, counsel devoted more than 1,800 hours over the course of more than

two years prosecuting the actions.  As set forth above, Plaintiffs' counsel exhaustively investigated

Plaintiffs' claims by communicating with Plaintiffs, reviewing their files and  independently

obtaining copies of the relevant contractual terms and conditions, as well as samples of Defendant's

marketing materials, researching what causes of action to assert against HIKO and developing a

theory of the case and litigation strategy.  Garber ¶ 3; Mendelsohn Dec. ¶ 9; Schelkopf Dec. ¶ 5;

O'Brien Dec. ¶ 3; Grunfeld Dec. ¶ 7; LaDuca Dec. ¶ 3;  Greenfield Dec. ¶ 3; Levine Dec. ¶ 4.  They

also identified the relevant energy markets and the rates available from local utilities and other

independent energy suppliers or ESCOs.   Garber Dec. ¶ 3.  After filing the actions, the Parties

engaged in aggressive motion practice, fully briefing motions to dismiss or strike class

allegations and for judgment on the pleadings, among other motions.[21]   While litigating the

Actions vigorously, the Parties met telephonically and in person to discuss a comprehensive

settlement of the claims of the Named Plaintiffs and the putative class.  Garber ¶ 11.  Plaintiffs'

counsel also met internally to review the strategy for and status of settlement negotiations.  Garber

Dec. ¶ 11; Grunfeld Dec. ¶ 7; LaDuca Dec. ¶ 3; Levine Dec. ¶ 4.  Finally, Plaintiffs' counsel

engaged in a day-long mediation session with Defendant's counsel before reaching an agreement

to settle the Actions.  Garber ¶ 13; LaDuca Dec. ¶ 3.   As part of investigation and to prepare for

class certification and trial on the merits, Class Counsel also engaged the services of and

consulted with an expert, Dr. Frank Felder, who provided his expertise in analyzing the manner

in which HIKO set its rates and determining the extent to which HIKO's rates were in excess of

rates charged by other ESCOs and local utilities.  Garber Dec. ¶ 10.

### b.    The Magnitude And Complexity Of The Litigation

The requested fee award is reasonable in light of the magnitude and complexity of the

litigation.  The Class itself comprises 185,593 members and Defendant agreed to a settlement

with a total value of between $7,225,000.00 and $10,225,000.00.  By any measure, the

magnitude of the case is substantial, fully justifying Class Counsel's investment of time and

labor, and fully merits the requested fee award.

In addition, the litigation involved a number of complex legal and factual issues. The

magnitude and complexity of this action was even greater because of the multiple states in which

HIKO is operating, the differing disclosures that HIKO made in each state and the prevailing

---

[21] *See* Dkt. Nos. 17-19, 23-26, 27-29, 33-34, 35-36, 43-45, 46, and 47 in *Chen*, No. 14-1771
(S.D.N.Y.); Dkt. Nos. 13, 15, 16 and 20-22 in *Sasso*, No. 14-2042 (S.D.N.Y.); Dkt. Nos. 15-16
in *Bodganski*, No. 14-1948 (M.D. Pa.); Dkt. Nos. 19, 23-24, 36, 38 and 39 in *Kanto*r, No. 14-
5585 (E.D. Pa.); and Doc. Nos. 4-6, 10-11, 14-15 and 16-17 in *Spillman*, Index No. 651798/2015
(N.Y. Sup. Ct.).

electric and gas rates at the times when these disclosures were made. These were ever changing facts presenting unique challenges to Class Counsel.

If not for the Settlement, the need to research, brief, and develop factual submissions on class certification and summary judgment relating to these issues would have increased the expense, complexity, and duration of the litigation. Assuming Plaintiffs' claims survived HIKO's opposition to class certification and its summary judgment motion, moreover, trial preparation would have required countless hours of additional work, including preparing fact and expert witnesses, identifying exhibits, preparing proposed jury instructions, and preparing cross-examination outlines. The trial itself would consume significant judicial resources, and would engender additional motion practice (including evidentiary motions and any dispositive motions filed during or at the close of trial). Further, an appeal would have added to the complexity of the litigation. This is especially likely in view of the experience of defense counsel in litigating consumer class actions. *See In re Brown Co. Sec. Litig.*, 355 F. Supp. 574, 592-93 (S.D.N.Y. 1973) (prestige of opposing counsel highlights complexity of litigation and challenges faced by class counsel). The magnitude and complexity of the litigation weigh heavily in favor of the requested fee award.

### c. The Risk Of The Litigation

As discussed above, Plaintiffs' counsel and Plaintiffs faced substantial obstacles in successfully prosecuting this case. The Second Circuit has recognized that the risk involved in prosecuting a class action is an important consideration in determining an appropriate fee award. This factor is intended to recognize that cases taken on a contingent fee basis entail risk of non-payment for the attorneys that prosecute them, and it embodies an assumption that contingency work is entitled to greater compensation than non-contingency work. *In re Telik, Inc. Sec. Litig.*,

576 F. Supp. 2d at 592.  Of course, Plaintiffs' counsel received no compensation while incurring

the risks of the litigation.  Moreover, there was no way to know whether Plaintiffs' counsel

would ever be compensated for its substantial commitment to these actions.  In fact, the case law

is littered with unsuccessful class actions that provided no relief to the putative class and no fee

for class counsel.  *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *6

("[T]he risk of non-payment in complex cases, such as this one, is very real.  There are numerous

class actions in which counsel expended thousands of hours and yet received no remuneration

whatsoever despite their diligence and expertise.  There is no guarantee of reaching trial, and

even a victory at trial does not guarantee recovery.") (collecting cases).

Plaintiffs' counsel incurred 100% of the risk, devoting their time and labor to gather

evidence of Defendant's suspected wrongdoing, evaluating Defendant's potential liability,

analyzing potential legal theories, drafting the complaint, and engaging in substantial motion

practice and discovery and investigation.  Throughout, there was no assurance of success or

compensation.  The requested fee award is entirely reasonable in light of the risks incurred by

Plaintiffs' counsel.

### d.    The Quality Of Representation

The quality of Class Counsel's representation is reflected in the reputation of Class

Counsel; the experience of the attorneys principally involved in these action; and above all, the

manner in which they prosecuted these actions from the pleadings, through motion practice and

discovery, to the settlement negotiations and the instant motion for final approval.

The Court has observed first-hand in these cases the skills and abilities of Class Counsel,

and Class Counsel enjoys a strong reputation in the area of complex and class action litigation.

Garber Dec. ¶ 18.  Moreover, Class Counsel has demonstrated its ability to successfully

prosecute these actions, having survived motions to dismiss similar actions.  Garber Dec. ¶ 21.

Moreover, as demonstrated by its Firm Resume, attached as Exhibit 2 to the Garber Dec., its

attorneys, including D. Greg Blankinship and Todd S. Garber, have been appointed class counsel

in numerous other cases.  Other Plaintiffs' counsel are also highly experienced and

knowledgeable in the area of complex and class action litigation.  Mendelsohn Dec. ¶¶ 5-6 and

Exhibit A; Grunfeld Dec. ¶¶ 19 and 21, and Exhibit 1; Greenfield Dec. ¶ 6 and Exhibit A; LaDuca

Dec. ¶ 6; Levine Dec., Exhibit 3.

      The Settlement negotiated with Defendant is a highly favorable outcome for the Class,

and is the direct result of the creativity, diligence, hard work, and skill brought to bear by

Plaintiffs' counsel at every stage of the proceedings.  Throughout the litigation, Plaintiffs'

counsel have put the best interests of the Class ahead of theirs, negotiating the most favorable

settlement terms possible and then negotiating a fee to be paid by HIKO, rather than the Class,

and which in no way diminishes or erodes the benefits received by Class members.  Plaintiffs'

counsel's exemplary prosecution of this class action weighs strongly in favor of the proposed fee

award.

      The high quality of the opposition that Plaintiffs' counsel faced is a further testament to

the quality of Plaintiffs' counsel's representation.  Defendant is represented by skilled and highly

regarded counsel from a prestigious firm with a well-deserved reputation for vigorous advocacy

in the defense of complex civil cases.  Courts have repeatedly recognized that the caliber of the

opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality

of the plaintiffs' counsel's performance, and in these cases, it supports approval of the requested

fee.  *See, e.g.*, *In re Marsh Erisa Litig.*, 265 F.R.D. at 148 (reasonableness of fee was supported

by fact that defendants "were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and allegations").

### e.     The Requested Fee In Relation To The Settlement

The federal courts have established that a standard fee in complex class action cases like this one, where the plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit. *Id.* at 149 (collecting cases and awarding $11,665,500 or one-third of the recovery). Plaintiffs only request $975,000.00, which is 9.54% to 13.49% of the total value of the settlement, including attorneys' fees and expenses and the cost of settlement administration. Plaintiffs secured Defendant's agreement to pay this amount separate and apart from the benefit obtained for the Class. On a percentage basis, the compensation requested here is plainly well within the range of percentage fee awards within the Second Circuit, particularly in cases with similarly-sized settlements. *See, e.g., Hernandez*, 2013 WL 1209563, at *8 (awarding "$2,310,000 which is 33% of the settlement fund"); *Clark v. Ecolab Inc.*, No. 07-8623, 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (awarding fees of 33% of $6 million settlement fund); *Willix*, 2011 WL 754862, at *6 (awarding "$2,558,333 in attorneys' fees or one third (33 1/3%) of the Fund"); *Hicks*, 2005 WL 27257792, at *9 (awarding 30% of $10 million settlement, plus expenditures); *Maley*, 186 F.Supp.2d at 370 (awarding 33 1/3% of fund valued at $11.5 million); *In re Warnaco Group, Inc. Sec. Litig.*, No. 00-6266, 2004 WL 1574690, at *3 (S.D.N.Y. July 13, 2004) (30% of $12.85 million settlement); *Khait v. Whirlpool Corp.*, No. 06-6381, 2010 WL 2025106, at *8-*9 (E.D.N.Y. Jan. 20, 2010) (awarding $3,052,500 or 33% of settlement fund).

The $975,000.00 award for fees and expenses that Class Counsel has requested, and that HIKO has agreed to pay, is in line with awards from courts within this Circuit in similar

circumstances and leans towards the lower end given the particular facts of this case and the size of the Settlement.

###### f.      Public Policy Considerations

Strong public policy supports rewarding counsel for bringing successful consumer protection litigation.  *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (holding that if the "important public policy [of enforcing consumer protection laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing [consumer protection] laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

The Settlement provides substantial benefits to the public as well as the individual HIKO consumers.  It serves public policy – as embodied in state consumer fraud statues and the common law of contract – by compensating consumers, holding HIKO accountable for its allegedly misleading advertising, and deterring future deceptive practices by HIKO.  This deterrent effect, moreover, should carry over to other ESCOs, which will be on notice that they will suffer unwanted cost, inconvenience, bad publicity, and legal exposure if they fail to accurately advertise the energy rates they intend to charge their customers.  "Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever."  *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010).

Moreover, the fee request does not bestowing a windfall on Class Counsel (see lodestar cross-check *infra*).  Therefore, the policy of awarding fees in a lower range to account for economies of scale and to prevent windfalls is not at issue here.  Simply put, there is no reason to depart from the $975,000.00 that HIKO has agreed to pay, as this amount falls squarely within the range of fees normally approved within this Circuit under either the percentage of the fund or lodestar methodology, and any reduction would be against public policy as it would discourage future class counsel from bringing similar cases and reward the alleged wrongdoer for the benefit of neither the Class or the public at large.

Taking into account all the *Goldberger* factors, the $975,000.00 award to Class Counsel comprises a reasonable percentage of the benefit bestowed on the Class, and should be approved.

### E.        The Fee Is Justified Under The Lodestar/Multiplier Method

Application of the lodestar method confirms the reasonableness of Class Counsel's request.  Despite its criticism of the lodestar method, the Second Circuit has advised that it remains potentially useful as a "cross-check" against the percentage method.  *Goldberger*, 209 F.3d at 50.  "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized."  *Id.* (citation omitted).

Under the lodestar method, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rates, and then the court adjusts that lodestar figure (by applying a multiplier) "to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *23.  *See also Maley*, 186 F. Supp. 2d at 370 (explaining that the lodestar "is typically enhanced by a multiplier to reflect consideration of a number of factors, including the contingent nature of success and the quality of the

attorney's work") (citation omitted).  "In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court." *In re Telik*, 576 F. Supp. 2d at 590 (a multiplier of 4 .65 was "well within the range awarded by courts in this Circuit and courts throughout the country") (citing *Maley*, 186 F. Supp. 2d at 369).[22]

The fee requested for these cases is more than justified under the lodestar method. Plaintiffs' counsel reasonably devoted in excess of 1,800 hours to these actions, including time spent researching the facts and the law, drafting the complaint, conducting discovery, motion practice, and negotiating the settlement.  Applying Plaintiffs' counsel's hourly rates,[23] which are reasonable and well within the range typically charged by similarly well qualified counsel in this District, yields a lodestar of $1,108,107.03 with expenses.

Moreover, the hourly rates charged by counsel are reasonable, indeed modest, by comparison with other firms in the Southern Districts. "[T]he American Lawyer recently reported that the median billing rate for partners at many leading law firms exceeds $900/hour. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26.[24]

---

[22] *See, e.g., Hernandez*, 2013 WL 1209563, at *9 (Awarding lodestar multiplier of 3.8, holding it "well within the range of multipliers that have been granted by courts in this Circuit and elsewhere" and noting that "Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers.") (collecting cases); *Spicer v. Pier Sixty LLC,* No. 08-10240, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts.") (quoting *In re Telik*, 576 F. Supp. 2d at 590); *deMunecas v. Bold Food, LLC*, No. 09-440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar.").

[23] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds.  *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).  *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163-64 (S.D.N.Y. 1989) (citing cases); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n.25 (S.D.N.Y. 1998).

[24] *See, e.g., In re Nissan Radiator/Transmission Cooler Litig.,* No. 10-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) (finding reasonable attorneys' fees based on hourly rates ranging from

Comparing the lodestar with the requested fee of $975,000 yields a negative multiplier of 0.8798.  That multiplier is unquestionably within the range of multipliers found reasonable by courts in this Circuit, and is fully justified in light of the effort undertaken, the recovery achieved, risks involved, and the efficiency with which these cases were litigated.  In sum, the 0.8798 multiplier sought here is reasonable and within the range approved in past cases.

**F.     The Reaction Of The Class Is Overwhelmingly Favorable**

Courts give "great weight" to the reaction by members of the Class to a class action settlement.  *Maley*, 186 F. Supp. 2d at 374 (citation omitted).  Numerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee.  *Id.  See also Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (lack of objections is "strong evidence" of the reasonableness of the fee request).  Here, Class Notice approved by the Court was mailed to 185,593 Class members.  The Class Notice advised that Class Counsel would seek court approval of fees and expenses in an amount up to $975,000 and that HIKO had agreed to pay such fees and expenses separate and apart from the relief provided to the Class.  Only one Class member objected to the Settlement, and his objection, as discussed earlier, is completely unfounded.  Moreover, none of the Class members in the calls to the Settlement Administrator expressed any reservations about Class Counsel's anticipated fee request.  This "overwhelmingly positive response to date by the Class attests to the approval of the Class with respect to both the Settlement and the fee and expense application."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *29; *In re Rite*

---

$750 (partner) to $650 (associate)); *Chin v. RCN Corp.*, No. 08-7349, 2010 WL 3958794, at *5-6 (S.D.N.Y. Sept. 8, 2010) (approving a "blended" hourly rate of approximately $605); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-1825, 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) (hourly rates up to $880 were "not extraordinary for top New York law firms"); *Telik*, 576 F. Supp. 2d at 589-90 (noting that hourly rates of $700-$750 for partners were consistent with the rates charged by the defense bar for similar work, and that comparable rates have been found reasonable by other courts for class action work).

*Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("Notice of the fee request and the terms of the settlement were mailed to 300,000 class members, and only two objected. We agree with the District Court such a low level of objection is a 'rare phenomenon.'").

## IX.   THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Plaintiffs' counsel's fee application includes a request for reimbursement of litigation expenses that were reasonably incurred and necessary to the prosecution of these actions. *See* Garber Dec. ¶ 27. These expenses are properly recovered by counsel. *See In re China Sunergy Sec. Litig.*, No. 07-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'"). As set forth in detail in the declarations filed herewith, Plaintiffs' counsel collectively incurred $21,592.98 in litigation expenses on behalf of the Class in the prosecution of these actions. Reimbursement of these expenses is fair and reasonable and the expenses are encompassed by the $975,000 request. *See, e.g., In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices and Products Liab. Litig.*, 09-MD-2102, 2010 WL 3422722, at *8-9 (S.D.N.Y. Aug. 24, 2010) (approving flat payment covering fees and expenses).

All of the expenses were reasonable and necessary to the prosecution of these actions, and are of the type that law firms typically bill to their clients and that courts typically approve for reimbursement.[25]

---

[25] *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02-1484, 2007 WL 313474, at *24 (S.D.N.Y. Feb. 1, 2007) (awarding expenses for "computer research, reproduction/duplication, secretarial overtime, phone/fax/postage, messenger/overnight delivery, local transportation/meals, filing fees and attorney services") (internal quotations omitted); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *10 (awarding expenses including "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a

X.      **NAMED PLAINTIFF ENHANCEMENT AWARDS**

Providing named plaintiff enhancement awards, also known as service awards, to

consumers who come forward to represent a class is a necessary and important component of any

class action settlement.  *See Viafara v. MCIZ Corp.*, No. 12 7452, 2014 WL 1777438, at *16

(S.D.N.Y. May 1, 2014) ("Service awards are common in class action cases and serve to

compensate plaintiffs for the time and effort expended in assisting the prosecution of the

litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens

sustained by the plaintiffs.  It is important to compensate plaintiffs for the time they spend and

the risks they take.  The Court finds reasonable service awards of $12,500 to Viafara for the

MCIZ Settlement and $12,500 for the JAD Settlement.") (citations omitted); *Elliot v.

Leatherstocking Corp.*, No. 10-0934, 2012 WL 6024572, at *7 (N.D.N.Y. Dec. 4, 2012)

("Service awards are common in class action cases and are important to compensate a plaintiff

for the time and effort expended in assisting in the prosecution of the litigation.").

Plaintiffs' counsel respectfully request that the Court approve the payment of named

plaintiff enhancement award to Plaintiffs in the amount of $4,000 each in recognition of their

efforts on behalf of the Class.  Pursuant to the Settlement Agreement, HIKO has agreed to pay

these awards using its own resources, which means these payments will not reduce the benefits

provided to the Class members.  The requested payments are well deserved and fall well within

the range of incentive awards approved in prior cases.  *Polaroid*, 2007 WL 2116398, at *3

(citing *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting case

law supports payments of between $2,500 and $85,000 to representative plaintiffs in class

---

document database, messenger service, postage and next day delivery, long distance and
facsimile expenses, transportation, [and] travel"); *In re China Sunergy Sec. Litig.*, 2011 WL
1899715, at *6 (same).

actions).  Moreover, as with the fee request, the service award request was subject to arm's length negotiations between parties and was adequately disclosed in advance to the Class.

Plaintiffs reviewed and discussed with Class Counsel the pleadings, discovery demands, discovery responses and memoranda of law.  Garber Dec. ¶ 16; Grunfeld Dec. ¶ 27.  Plaintiffs conferred with their respective counsel regarding the status of the cases and the settlement negotiations, at all times encouraging Class Counsel to obtain the best possible result for the absent class members.  Garber Dec. ¶ 16; Grunfeld Dec. ¶ 27.  Plaintiffs' participation was substantial and indispensable.

## IX.    CONCLUSION.

Plaintiffs respectfully request that the Court finally approve the Settlement Agreement, certify the Settlement Class, enter the proposed Final Approval Order, and approve the requested attorneys' fees and expenses and Named Plaintiff Enhancement Awards.

Dated:  White Plains, New York
          April 25, 2016

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By: _____
      Todd S. Garber
      Antonino B. Roman
      445 Hamilton Avenue
      White Plains, New York 10601
      Tel: (914) 298-3281
      Fax: (914) 824-1561
      tgarber@fbfglaw.com